# 14-4649(L),

**14-4710(CON)**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

---

### IN RE ELECTRONIC BOOKS ANTITRUST

---

**Appeal from the United States District Court
For the Southern District of New York (Foley Square)
Case No. 1:11-md-02293-DLC
Hon. Denise L. Cote, U.S. District Judge**

---

### BRIEF OF OBJECTOR-APPELLANT
### DIANNE YOUNG ERWIN

---

**Christopher A. Bandas**
**BANDAS LAW FIRM, P.C.**
**500 North Shoreline Blvd., Suite 1020**
**Corpus Christi, Texas 78401**
**(361) 698-5200 Telephone**
**(361) 698-5222 Facsimile**
**cbandas@bandaslawfirm.com**
*Attorneys for Objector-Appellant*
*Dianne Young Erwin*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................. iii

Statement of Subject Matter and Appellate Jurisdiction.................................. 1

Statement of the Issues Presented................................................................... 2

Statement of the Case ...................................................................................... 4

    A.    Apple E-book Conspiracy............................................................. 4

    B.    DOJ and the States' Successful Trial Against Apple....................... 5

    C.    Class Action Settlement Agreement.............................................. 8

    D.    Erwin's Objection and Deposition. ............................................ 11

    E.    The Fairness Hearing and Rulings. ............................................ 12

Summary of the Argument............................................................................ 14

Argument....................................................................................................... 16

I.    Settlement approval must be reversed because class counsel breached their fiduciary duty in structuring this settlement to include a high-low contingent agreement and an unopposed, segregated fee agreement. .............. 16

    A.    Class counsel breached their fiduciary duty by agreeing to a high-low agreement that impermissibly shifts litigation risk to the class members. ............................................................................. 18

    B.    Class counsel breached their fiduciary obligation to the class by structuring the settlement to include an unopposed, segregated fee fund that would revert excess fees to Apple. ...................................... 21

II.    The district court erred in calculating class counsel's fee award based on exaggerated class recovery: when properly calculated, the fee award is excessive given the size of the fund and given class counsel's piggybacking off the governments' successful trial against Apple..................... 25

    A.    Class counsel's 15.8% or 33.3% percentage-of-the-fund fee award is excessive because they exceed the range of percentages awarded in similar megafunds........................................................................ 28

    B.    Class counsel's 15.8% or 33.3% percentage-of-the-fund fee award is also excessive because it should have been discounted for piggybacking off the governments' successful trial against Apple. ....................................... 31

i

PROOF OF SERVICE ................................................................... 34

CERTIFICATE OF COMPLIANCE  WITH FED. R. APP. 32(a)(7)(C) ................. 35

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Bath Junkie Branson, LLC v. Bath Junkie, Inc.*,
528 F.3d 556 (8th Cir. 2008) ....................................................................... 23

*Craftwood Lumber v. Interline Brands, Inc.*,
(N.D. Ill. Mar. 23, 2015) ............................................................................. 34

*Crawford v. Equifax Payment Servs., Inc.*,
201 F.3d 877 (7th Cir. 2000)) ...................................................................... 30

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
662 F.3d 913 (7th Cir. 2011) ...................................................................21, 22

*Culver v. City of Milwaukee*,
277 F.3d 908 (7th Cir. 2002) ....................................................................21, 22

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) .......................................................................................... 6

*Dubin v. Miller*,
132 F.R.D. 269 (D. Colo. 1990) .................................................................... 23

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000) ...................................................................8, 28, 33

*Greenfield v. Villager Industries, Inc.*,
483 F.2d 824 (3d Cir. 1973) ......................................................................... 22

*In re Aqua Dots Prod. Liab. Litig.*,
654 F.3d 748 (7th Cir. 2011) ........................................................................ 25

*In re AT&T Corp. Secs. Litig.*,
455 F.3d 160 (3d Cir. 2006) ......................................................................... 37

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 947 (9th Cir. 2011) ................................................................27, 28, 29

*In re Cendant Corp. Securities Litigation*,
404 F.3d 173 (3d Cir. 2005) ........................................................................ 22

*In re Citigroup Sec. Litig.,*
965 F. Supp. 2d 369 (S.D.N.Y. 2013) ......................................................... 28

*In re Dry Max Pampers Litig.,*
724 F.3d 713 (6th Cir. 2013) ...................................................................... 22

*In re First Fidelity Securities Litigation*,
750 F.Supp. 160 (D. N.J. 1990) .................................................................. 34

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
("*In re GM Pick-Up Truck*"),
55 F.3d 768 (3d Cir. 1995) ....................................................................22, 31

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ........................... 34

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................8, 20, 33

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24, (1st Cir. 2009)...................................................................21, 22

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998) ..................................................................... 8, 37

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...................................................................18, 35

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.,*
724 F. Supp. 160 (S.D.N.Y. 1989) .............................................................. 33

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ......................................................................... 9

iv

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ................................................................ 30

*Ortiz v. Chop't Creative Salad Co. LLC*,
2015 U.S. Dist. LEXIS 22772 (S.D.N.Y. Jan. 15, 2015) ............................ 38

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ................................................21,28, 29

*Piambino v. Bailey*,
757 F.2d 1112 (11th Cir. 1985) ............................................................ 22

*Perdue v. Kenny A.*,
130 S. Ct. 1662 (2010) ........................................................................ 24

*Precision Assocs. v. Panalpina World Transp., Ltd.*,
2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013) ........................ 34

*Redman v. Radioshack Corp.*,
768 F.3d 622 (7th Cir. 2014) ........................................... 7, 20, 25, 32

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277, 286 (7th Cir. 2002) .......................................... 32, 37

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................ 21

*Silverman v. Motorola*,
739 F.3d 956 (7th Cir. 2013) ............................................................ 35

*Smalbein v. City of Daytona Beach*,
353 F.3d 901 (11th Cir. 2003) .......................................................... 23

*Sondel v. Northwest Airlines, Inc.*,
56 F.3d 934 (8th Cir. 1995) ..........................................................21, 22

*State of Texas v. Penguin Group (USA) Inc.*,
No. 12-cv-3394 (S.D.N.Y.) .............................................................. 11

*Strong v. BellSouth Telecomms., Inc.*,
   137 F.3d 844 (5th Cir.1998) ................................................................... 28

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ............................................................. 19, 37

*United States v. Apple, Inc.*,
   952 F.Supp.2d 638 (S.D.N.Y. 2013) ................................... 9, 10, 12, 13, 37

*United States v. Mejia*,
   545 F.3d 179 (2d Cir. 2008) ................................................................ 7, 8

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
   623 F.3d 82 (2d Cir. 2010) ..................................................................... 8

*Wagner v. Lehman Bros. Kuhn Loeb Inc.*,
   646 F. Supp. 643 (N.D. Ill. 1986) ........................................................... 23

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................... 31, 38

*Weinberger v. Great N. Nekoosa Corp.*,
   925 F.2d 518 (1st Cir. 1991) ................................................................. 27

*Zervos v. Verizon New York, Inc.*,
   252 F.3d 163, 169 (2d Cir. 2001) ............................................................ 9

*Zucker v. Occidental Petroleum Corp.*,
   192 F.3d 1323 (9th Cir. 1999) ............................................................... 22

## **Statutes**

15 U.S.C. § 1 .......................................................................................... 21

15 U.S.C. § 15 .......................................................................................... 1

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. § 1332(d)(2) ................................................................ 1

28 U.S.C. § 1332(d)(2)(A) ........................................................ 1

28 U.S.C. § 1337 ........................................................................ 1

## **Other Authorities**

Jonathan R. Macey & Geoffrey P. Miller,
*"The Plaintiffs' Attorney's Role in Class Action and Derivative
Litigation: Economic Analysis and Recommendations for
Reform,"* 58 U. Chi. L. Rev. 1 (1991) ...................................... 17

Samuel Issacharoff,
*"Governance and Legitimacy in the Law of Class Actions,"*
1999 S. Ct. Rev. 337 ................................................................ 17

## **Rules**

Fed. R. App. P. 32(a)(5) .......................................................... 36

Fed. R. App. P. 32(a)(6) .......................................................... 36

Fed. R. App. P. 32(a)(7)(B) ...................................................... 36

Fed. R. App. P. 32(a)(7)(B)(iii). ............................................... 36

Fed. R. Civ. P. 23(g) ................................................................ 16

Fed. R. Civ. Proc. 58 ................................................................. 1

Rule 23(a)(4) ............................................................................ 25

Rule 23(g)(4) ............................................................................ 17

## Statement of Subject Matter and Appellate Jurisdiction

The district court had diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), and federal question jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 15 U.S.C. § 15. The case is a class action brought, *inter alia*, under the Sherman Act, Clayton Act, and state antitrust and consumer protection laws, involving a nationwide class of more than 100 class members, the amount in controversy exceeds the sum of $5,000,000, and no statutory exception to 28 U.S.C. § 1332(d)(2) applies. For example, lead plaintiff Marcus Mathis is a citizen of Mississippi, and defendant Apple, Inc. is a California corporation with its principal place of business in California. AP0844, AP0847, AP0914, AP0915.[1]

The court's final judgment, pursuant to Fed. R. Civ. Proc. 58, issued on November 21, 2014. AP0004. Objector Dianne Young Erwin filed a timely notice of appeal, No. 14-4649, on December 17, 2014. AP0001. This notice is timely under Fed. R. App. Proc. 4(a)(1)(A).

This court has appellate jurisdiction because this is a timely-filed appeal from a final judgment under 28 U.S.C. § 1291. Objector Young Erwin has standing to appeal a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti,* 536 U.S. 1 (2002).

---

[1] "Dkt." stands for docket numbers in the underlying district-court case. "AP" stands for the appendix for this appeal (14-4649).

## Statement of the Issues Presented

1.     A settlement where class counsel shifts the risk of litigation to their clients is impermissible. *Redman v. Radioshack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014). Did the district court err as a matter of law in approving a settlement where class counsel structured a high-low agreement that disproportionately shifted the risk of the litigation to the clients?

**Standard of Review**: Questions of law are reviewed *de novo*. *E.g., United States v. Mejia*, 545 F.3d 179, 198-99 (2d Cir. 2008).

2.     There is a strong presumption of invalidity for a reversion agreement because any reduction in attorneys' fee request would revert to the defendant rather than the class. *Redman v. Radioshack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014). Did the district court err as a matter of law in approving a settlement where class counsel structured an unopposed, segregated fund for fees where any reduction in requested fees would revert to Apple rather than the class?

**Standard of Review**: Questions of law are reviewed *de novo*. *Mejia*, 545 F.3d at 198-99.

3.     "The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630. Did the district court err as a matter of law in calculating an attorneys' fee award for class counsel based on recovery for consumers that were not represented by class counsel but were

represented by the Attorneys General of the states that were a party to the Settlement, who received a separate fee award?

**Standard of Review**: Questions of law are reviewed *de novo*. *Mejia*, 545 F.3d at 198-99.

4.      "In cases where a class recovers more than $75-$200 million, courts weigh the economies of scale inherent in class actions in fixing a percentage to yield a recovery of reasonable fees." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998). "[F]ees in the range of 6-10 percent and even lower are common in megafund cases." *Id.* A fee award must also "separate out the benefits attributable to class counsel" and not credit them for the work of others. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 338 (3d Cir. 1998). Did the district court abuse its discretion when it awarded class counsel fees outside of the range for megafunds of similar size (15% for $190 million or $33% for $30 million) and failed to discount the fee award for successful litigation by the Department of Justice and Attorneys General from 33 states and for $11.2 million of fees for earlier recovery of $40.1 million in earlier settlements with Apple's co-defendants?

**Standard of Review**: This Court reviews "a district court's award of attorneys' fees for abuse of discretion, asking whether the court made 'a mistake of law or clearly erroneous factual finding.'" *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 86 (2d Cir. 2010) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). A district court decision to approve a class action settlement is reviewed for abuse of discretion. *See, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473

F.3d 423, 435 (2d Cir. 2007). "[A] district court abuses its discretion when '(1) its decision rests on an error of law (such as application of the wrong legal principles) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.'" *Id.* (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

**Statement of the Case**

**A.**    **Apple E-book Conspiracy.**

Since Amazon released its first Kindle device in November 2007, sales for books sold to consumers in electronic form—"e-books"—has exploded. *United States v. Apple, Inc.*, 952 F.Supp.2d 638, 648-49 (S.D.N.Y. 2013). Amazon gained market share by setting popular new e-book titles at $9.99 almost immediately after release, which was significantly lower than the price of physical books. *Id.* at 649. Apple had intended to enter the e-book market in April 2010 with the launch of its iPad, but Apple did not want to compete with Amazon's prices. *Id.* at 647, 654-55.

In December 2009, Apple met with the "Big Six" of United States publishing. *Id.* "Apple and the Publisher Defendants shared one overarching interest — that there be no price competition at the retail level. Apple did not want to compete with Amazon (or any other e-book retailer) on price; and the Publisher Defendants wanted to end Amazon's $9.99 pricing and increase significantly the prevailing price point for e-books." *Id.*

4

Apple orchestrated the conspiracy to restructure the e-book sales model. *Id.* The publishers entered into an "agency model" agreement with Apple under which the publishers would control all consumer retail prices of the e-book titles and the retailer (Apple) would sell the e-book as its agent. *Id.* at 648. Apple's agency agreements imposed a severe financial penalty on the publishers if they did not force Amazon and other retailers similarly to change their business models and cede control over e-book pricing to the publishers. *Id.* After five of the Big Six publishers entered into agreements with Apple, the publishers made clear to Amazon that if it did not agree to the same terms, the publishers would refuse to sell e-books to Amazon until months after they were made available to Amazon's competitor Apple; Amazon was forced to sign agency agreements with the publishers. *Id.* at 672, 682. As a result of the agency agreements, the publishers significantly increased retail prices for e-books. *Id.* at 685.

## B.    DOJ and the States' Successful Trial Against Apple.

After a lengthy investigation beginning in March 2010, on April 11, 2012, the United States Department of Justice ("DOJ") filed a civil antitrust action against Apple, and the five publisher defendants for federal antitrust violations. *United States v. Apple, Inc.*, No. 12-cv-2826 (S.D.N.Y.), ECF No. 1 ("DOJ Action"). Attorneys General from 33 states and U.S. territories (the "States") filed on April 11, 2012 against Apple and publishers Penguin, MacMillan and Simon & Schuster for violations of federal and state antitrust laws, and state consumer protection laws. *State*

*of Texas v. Penguin Group (USA) Inc.*, No. 12-cv-3394 (S.D.N.Y.), ECF No. 1 ("State Action").[2]

Piggybacking off of publicity of the government investigation, private plaintiffs filed several civil class actions. On December 9, 2011, the Judicial Panel on Multidistrict Litigation transferred five putative class actions to the Southern District of New York creating MDL No. 2293 ("Class Action") brought against Apple and five top book publishers: Hachette Book Group, Inc., Hachette Digital, Inc., Hachette Livre USA, Hachette Livre SA (collectively "Hachette"); HarperCollins Publishers LLC ("HarperCollins"), Holtbrinck Publishers LLC d/b/a Macmillan and Macmillan Publishers, Inc. (collectively "Macmillan"), Penguin Group (USA) Inc. ("Penguin"), Simon & Schuster, Inc. and Simon & Schuster Digital Sales, Inc. (collectively "Simon& Schuster"). The Class Action alleges that Apple and the publishers conspired to raise and fix the prices of electronic books ("e-books") to consumers in violation of federal and state antitrust laws. AP0835. Plaintiffs also claim that Apple deceived its customers in violation of state consumer protection laws. AP0914, AP0915.

---

[2] A third related case was brought by Attorneys General in forty-nine states, the District of Columbia, and five U.S. Territories on August 29, 2012 against publishers Hachette, HarperCollins, and Simon & Schuster seeking injunctive relief and damages as *parens patriae* for violations of federal antitrust laws, which action later settled and final judgment entered on February 8, 2013. *State of Texas, et al. v. Hachette Book Group, Inc.* 12-cv-6625 (S.D.N.Y.), ECF Nos. 1, 279.

The DOJ and the States settled with the publisher defendants. The district court entered final judgment as to publishers Hachette, HarperCollins and Simon & Schuster, Inc. on September 6, 2012, and final judgment as to publisher Penguin on May 17, 2013. *United States v. Apple, Inc.*, No. 12-cv-2826 (S.D.N.Y.), ECF Nos. 119, 259. On February 8, 2013, the DOJ reached a settlement with Macmillan, consenting to the entry of final judgment after compliance with Antitrust Procedures and Penalties Act, and final judgment was later entered on August 12, 2013. *United States v. Apple, Inc.*, No. 12-cv-2826 (S.D.N.Y.), ECF Nos. 174, 354.

Private plaintiffs also settled with the publisher defendants. Plaintiffs settled with publishers MacMillan and Penguin, which was approved by the district court on December 9, 2013, Dkt. 478, and plaintiffs also settled on behalf of Minnesota residents with Hachette, HarperCollins, and Simon & Schuster, which was approved on December 9, 2013, Dkt. 475 (collectively "Publisher Settlements"). In addition, the district court awarded attorneys' fees to class counsel for the Publisher Settlements in the amount of $10,455,534 and reimbursement of expenses of $750,465.44. Dkt. 474.

The government's pretrial litigation included 13 million pages of discovery and 56 depositions, in which class counsel "participated." AP0145, AP0146. The DOJ and the States then proceeded to trial against Apple in a bench trial from June 3 to June 20, 2013. *United States v. Apple, Inc.*, 952 F.Supp.2d 638, 709 (S.D.N.Y. 2013). During the three-week trial, the DOJ and the States called twelve fact witnesses and two expert economists including three Apple employees, senior executives from the five publisher defendants; the DOJ and the States also presented deposition excerpts from

three other witnesses. *Id.* at 646. Apple called three fact witnesses and three expert economists. *Id.* at 646-47.

 In an opinion and order dated July 10, 2013, the district court found Apple liable for violations of Section 1 of the Sherman Act and relevant state statutes. *United States v. Apple, Inc.*, 952 F.Supp.2d 638, 709 (S.D.N.Y. 2013). The district court entered final judgment against Apple in the DOJ Action and a permanent injunction against Apple in the State Action on September 5, 2013. *United States v. Apple, Inc.*, No. 12-cv-2826 (S.D.N.Y.), ECF No 374.

The district court indicated that issues relating to non-injunctive relief including damages and civil penalties in the State Action would be addressed in subsequent proceedings. *Id.* at 1. Apple filed its notice of appeal in the DOJ Action on October 3, 2013. *United States v. Apple, Inc.*, No. 12-cv-2826 (S.D.N.Y.), ECF No 379. Apple's appeal is pending in the Second Circuit Court of Appeals. *United States v. Apple, Inc.*, No. 13-3741 (2d Cir.) ("Apple Appeal"). On October 23, 2013, plaintiffs filed a First Amended Consolidated Class Action Complaint on behalf of consumers in those states which were not part of the States' action. AP0593.

## C.    Class Action Settlement Agreement.

In the Class Action, the district court granted plaintiffs' motion for certification of a class of e-book purchasers across 23 states on March 28, 2014. AP0300.

With liability established by issue preclusion, the court scheduled a damages trial for August 2014. AP0200. On July 16, 2014, before the damages trial began, the States, Apple, and the Class Action plaintiffs filed a proposed settlement agreement

with the district court. AP0240. The Settlement included an unusual "high-low" agreement contingent upon the decision of the Second Circuit on Apple's Appeal of the district court's liability ruling contained in its July 10, 2013 Order. AP0240. Under the Settlement, there were three possibilities: (1) if the liability ruling was affirmed by the Second Circuit, Apple would pay $400 million for consumer compensation, $20 million to the States for attorneys' fees, and $30 million to class counsel ("Affirmed Outcome"); (2) if the liability ruling was remanded by the Second Circuit with instructions for reconsideration or retrial, Apple would pay $50 million for consumer compensation, $10 million to the States for attorneys' fees, and $10 million to class counsel ("Remand Outcome"); or (3) if the liability ruling was reversed by the Second Circuit, Apple would pay nothing and plaintiffs would move to dismiss their claims with prejudice ("Reversed Outcome"). AP0240. The settlement affects 23 million class members. AP0058.

Rather than using a common fund, the Settlement creates a separate fund for the payment of attorneys' fees. AP0254. Because it is separate from the fund created for compensation to the class members, any reduction in awarded attorneys' fees by the district court would not return to class members, but would instead return to Apple. AP0240. In addition, the Settlement is structured to provide "clear sailing": no opposition from Apple to any fee request by class counsel consistent with the agreement; Apple further agreed to work with class counsel for approval in the district court of the Settlement. AP0252, AP0254, AP0261.

While Apple agreed to pay $400 million (Affirmed Outcome) and $50 million (Remand Outcome), this includes payments to consumers in states not represented by class counsel. AP0155. For the 23 states represented by class counsel, the recovery is only approximately 40% of the total Settlement value: under Affirmed Outcome, recovery in class states totals $160 million and under Remand Outcome, recovery in class states totals $20 million. AP0156. Accordingly, the fee as the percentage of class recovery, including the earlier settlements, is as follows:

| Defendant | Recovery in Class States | Class counsel fee and expense | Recovery plus fee and expense | Percentage |
|---|---|---|---|---|
| MacMillan | $8,000,000 | $2,475,000 | $10,475,000 | 23.6% |
| Penguin | $30,000,000 | $8,000,000 | $38,000,000 | 21.0% |
| HarperCollins | $2,119,000 | $731,000 | $2,850,000 | 25.6% |
| Apple Scenario 1 | $160,000,000 | $30,000,000 | $190,000,000 | 15.8% |
| Apple Scenario 2 | $20,000,000 | $10,000,000 | $30,000,000 | 33.3% |
| All Defendants (Apple Scenario 1) | $200,119,000 | $41,206,000 | $241,325,000 | 17.1% |
| All Defendants (Apple Scenario 2) | $60,119,000 | $21,206,000 | $81,325,000 | 26.1% |

AP0156.

Class counsel argued that "[u]nder any outcome of the Liability Appeal, when measured against the amount received by the class, Class Counsel would not receive an amount that exceeded 26 percent of the benefit conferred to the class states." AP0156. Class counsel sought to justify their fee by arguing that it should be measured against recovery to all consumers (even states they did not represent)

arguing: "Class Counsel's request here equates to 7 percent (scenario #1), 17 percent (scenario #2) or 0 percent (scenario #3) of the total recovery to consumers nationwide." AP0164. Because only approximately 40% of the total Settlement value can be attributed to class counsel: class counsel is seeking 15.8% of $190 million total under the Affirmed Outcome or 33% of $30 million under the Remand Outcome. AP0156.

Class counsel's total lodestar was $9,532,321.75, or 3.08 multiplier under outcome one and a 0.99 multiplier under outcome two. AP0165. This figure included lodestar for which class counsel had already been compensated in the earlier settlements. AP0157. Combined with the previous fee award of $10,455,534.56 from the Publisher Settlements, the fee request resulted in a multiplier of 4.18 (for the $30 million award) or 2.08 (for the $10 million fee award). AP0165.

The court gave preliminary approval to the Settlement on August 1, 2014. AP0199. Objections were due October 31, 2014 and the district court scheduled the final fairness hearing for November 21, 2014. AP0199.

## D.   Erwin's Objection and Deposition.

Dianne Young Erwin is a class member who objected to the Settlement. AP0132. She argued, *inter alia*, that the Settlement was unfair because the high-low agreement meant that class counsel was impermissibly shifting the risk of the litigation to the class members. AP0121. Indeed, Erwin argued, the Settlement was improperly structured because the segregated fee fund would permit any reduction of excessive attorneys' fees to revert to Apple rather than to consumers. AP0124. In addition to

the structural problems, Objector Erwin further contested that the attorneys' fee request was excessive. AP0125.

After Erwin objected, class counsel requested leave to depose Erwin. AP0111. Class counsel sought to depose Erwin to "discover the circumstances of [Erwin's] objection." AP0111. In her deposition, Erwin confirmed that she was a class member, received notice of the Settlement, did not believe the Settlement was fair, and decided to object. AP0096, AP0097, AP0098. Erwin did not know all details about the procedural posture: "Q. So you believe there was a trial having to do with damages? A. I think so." AP0101. Erwin was also unable to articulate the exact terms of the Settlement: "Q. …whether it was a $400 million Settlement, a $50 million Settlement or zero. Is that your understanding? A. I think so. I don't know if I'm saying it exactly how I read it, because I don't have any of the paperwork in front of me []." AP0103. But Erwin confirmed that her counsel represented her and she had agreed to their submission of her objection. AP0106.

## E.    The Fairness Hearing and Rulings.

The court held a fairness hearing on November 21, 2014. AP0020. The district court responded to only one of Erwin's arguments. In describing the excessiveness of the fee award, Erwin argued that there was "no flash of brilliance by class counsel that dramatically altered the course of this litigation." AP0126.  At the fairness hearing, the district court rejected Erwin's argument because "flash of brilliance" was not the test. AP0040. Erwin's excessiveness argument, however, focused on the fact that the proposed Settlement (whether the Second Circuit affirmed or remanded) involved a

megafund and could not be compared to lesser settlements. AP0126 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001)). The district court provided no response to Erwin's argument about megafund fee awards at the hearing or in its written opinion. AP0014, AP0020. Instead, the court merely found that the fee award was "consistent with the settlement's size and scope" and "consistent with awards for similar work in similar cases." AP0016.

On November 21, 2014, the court issued Final Judgment. AP0004. On November 21, 2014, the court also issued an Order Granting Motion for Attorneys' Fees ("Fee Order"). AP0014. In its Fee Order, the district court rejected Erwin's challenge to the excessive fee request with its conclusory response that the fees (0, 7 or 17 percent) were within range of similar recoveries in other cases. AP0016. The district court also held that detailed time entries supporting the fee award were unnecessary. AP0018. The district court's opinion rejected Erwin's argument that the segregated fee agreement (with reversion to Apple) was unfair, finding instead that the separate negotiation protected consumer interests. AP0018. The court's opinion failed to address Erwin's argument that the high-low agreement impermissibly shifted class counsel's risk to the class members. AP0014.

Objector Diane Young Erwin timely filed her Notice of Appeal on December 17, 2014. AP0001.

## Summary of the Argument

This proposed Settlement of an antitrust class action involving Apple's e-books follows the successful litigation by the DOJ and the Attorneys General of 33 states. The government entities had a lengthy investigation, pretrial proceedings of over 50 depositions and 13 million pages of discovery and eventually, a three-week trial with 15 fact witness and five expert witnesses. The governments won and now class counsel wants to be paid for the governments' work. Class counsel's fee request is excessive because the Settlement piggybacks off the governments' successful trial. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) (affirming district court's fee calculation based on its finding that counsel was only partially responsible for result because their "case rode 'piggyback'" on another case).

As an initial matter, class counsel's fee request exaggerated the recovery on which they sought fees: class counsel sought fees based on the entire $400 million or $50 million available to consumers although class counsel represents only 23 states (approximately 40% of the Settlement value). Thus, while they justified their fee award by arguing that it was 7% or 17% of the fund, their actual fee award totaled 15.8% of $190 million ($30 million) under the Affirmed Outcome, or 33% of $30 million ($10 million) under the Remand Outcome. AP0156. The properly calculated 15.8% or 33% request exceeds percentages normally applied to similar megafunds. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) ("In cases where a class recovers more than $75-$200 million, courts weigh the economies of scale inherent in class actions in fixing a percentage to yield a recovery

of reasonable fees." … "[F]ees in the range of 6-10 percent and even lower are common in megafund cases.").

The Settlement must also be reversed because class counsel breached its fiduciary obligations to the class members in two respects. *First,* class counsel structured the Settlement to include a high-low agreement that provides $400 million under the Affirmed Outcome or $50 million under the Remand Outcome. While this corresponds to a significant 87% decrease in recovery for consumers between the two outcomes, class counsel protected their fees by negotiating a fee award that decreased by only 66% and included double payment (or quadruple payment) of their lodestar investment. Class counsel impermissibly shifted the risk of the litigation to their clients. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014).

*Second*, class counsel further breached their fiduciary obligations to the class by structuring the settlement to include an unopposed, segregated fee award. Because the fee was separate, rather than as part of common fund for the class, if the district court reduced the fee request, any reduction would go to Apple rather than the class members. As fiduciaries for the class, the class counsel should have demanded a structure where any reduction would return to the class. *See, e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 786-87 (7th Cir. 2014). Class counsel's fiduciary breaches require reversal and this Court should remand with instructions to determine whether the class should be decertified because class counsel are inadequate representatives. *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002).

# Argument

I. **Settlement approval must be reversed because class counsel breached their fiduciary duty in structuring this settlement to include a high-low contingent agreement and an unopposed, segregated fee agreement.**

Class counsel must "prosecute the case in the interest of the class, of which they are fiduciaries, … rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (citing *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n. 12 (1st Cir. 2009); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009); *Sondel v. Northwest Airlines, Inc.*, 56 F.3d 934, 938 (8th Cir. 1995); Fed. R. Civ. P. 23(g) ("Class counsel must fairly and adequately represent the interests of the class.").

As in this case, class counsel's "fiduciary obligation [is] of particular significance to their clients when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori*, 662 F.3d at 917 (citing *Culver*, 277 F.3d at 913; *In re Cendant Corp. Securities Litigation*, 404 F.3d 173, 186-87 (3d Cir. 2005); Samuel Issacharoff, "Governance and Legitimacy in the Law of Class Actions," 1999 S. Ct. Rev. 337, 371-72; Jonathan R. Macey & Geoffrey P. Miller, "The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform," 58 U. Chi. L. Rev. 1, 19-20 (1991)).

The fiduciary obligation of class counsel must be reviewed not just at certification, but "[w]hen reviewing settlements, district courts also must ensure class counsel have met their ongoing duty, imposed by Rule 23(g)(4), to fairly and adequately represent the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 36. Indeed, this "is why settlements of class actions require approval by the district court." *Creative Montessori*, 662 F.3d at 917. "[C]lass counsel are no more entitled to disregard their 'fiduciary responsibilities' than class representatives are." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*In re GM Pick-Up Truck*"), 55 F.3d 768, 820 (3d Cir. 1995)).

"If, therefore, the lawyer, through breach of his fiduciary obligations to the class … or otherwise, demonstrates that he is not an adequate representative of the interests of the class as a whole, realism requires that certification be denied." *Culver*, 277 F.3d at 913 (citing *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1327-28 (9th Cir. 1999); *Sondel*, 56 F.3d at 938; *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985); *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973); *Dubin v. Miller*, 132 F.R.D. 269, 273 (D. Colo. 1990); *Wagner v. Lehman Bros. Kuhn Loeb Inc.*, 646 F. Supp. 643, 661 (N.D. Ill. 1986).

Here, class counsel breached their fiduciary duty in two significant respects: (1) structuring the settlement to include a high-low agreement that shifts the risk to the class; (2) structuring the settlement to include an unopposed, segregated fee fund with reversion to Apple. At the very least, each of these breaches provides independent

17

reason to reverse the settlement approval, and the case should be remanded to the district court with instructions to determine if decertification is appropriate.

## A. Class counsel breached their fiduciary duty by agreeing to a high-low agreement that impermissibly shifts litigation risk to the class members.

Class counsel structured the Settlement to include a high-low agreement that impermissibly shifts a disproportionate amount of class counsel's litigation risk to their clients. A high-low settlement agreement is typically one in which a plaintiff will recover no less than a certain amount and no more than a certain amount regardless of the verdict. *See Bath Junkie Branson, LLC v. Bath Junkie, Inc.*, 528 F.3d 556, 562 n.5 (8th Cir. 2008). Such agreements are not unusual because they "bracket the parties' risk of litigation." *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 911 (11th Cir. 2003).

The Settlement here provides a variation of a high-low agreement which thrusts almost all of the risk of the litigation on the class members. Plaintiffs' expert estimated total damages at $674 million after an offset for recovery from the publisher defendants. AP0062. Under the Affirmed Outcome and the Remand Outcome of the Settlement, Apple would provide either $400 million consumer recovery ($160 million for those represented by class counsel) if the Second Circuit affirms the district court's ruling in Apple's Appeal, or $50 million consumer recovery ($20 million for those represented by class counsel) if the Second Circuit remands Apple's Appeal with instructions for reconsideration or retrial. AP0240. There is an 87.5% decrease in class recovery between the two outcomes. This significant decrease results in recovery under the Remand Outcome dropping to between $0.07 and $0.09 per non-Best Seller

e-books and $0.32 to $0.81 per Best Seller e-book. AP0927. Class counsel's fees, however, drop from $30 million to $10 million between the Affirmed Outcome and the Remand Outcome, only a 66.6% decrease. The incongruity between the decrease for class recovery and the decrease in fees for the two outcomes demonstrates that the risk is not shared equally by class and class counsel—especially since class counsel was free-riding, having fully recovered their lodestar in the earlier settlement with the publisher defendants.

Moreover, the $10 million Remand Outcome fee award would result in recovery of class counsel's total lodestar investment of $9.5 million or a multiplier of over four. AP0165. The law has a "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010). A lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1673. Thus, while the class risks a significant decrease in potential recovery, class counsel has eliminated their risk by receiving a fee commensurate to if they had won the case outright.

Recently, Judge Posner of the Seventh Circuit Court of Appeals held that it was impermissible for class counsel to shift the risk of the litigation to their clients:

> Suppose that after working diligently for many days—an amount of work for which normally they would charge a client $1 million—class counsel discovered that the expected value of the litigation (the most reliable predictor of what a judge or jury would award as damages and an appellate court uphold) was $1.1 million, and on that basis they settled the suit with the defendant

for that amount. It would be absurd to approve a settlement that awarded class counsel ten times the damages awarded the class ($100,000 in the example), on the basis of "the amount of time class counsel reasonably expended working on the action," even if the expenditure was "reasonable" given what class counsel reasonably but mistakenly had thought the case worth to the class. ***For that would be a settlement in which class counsel had been able to shift the entire risk of the litigation to their clients***.

*Redman v. Radioshack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014) (emphasis added). Class counsel breach their fiduciary obligation when they agree to a fee arrangement to the detriment of the class. *Lobatz*, 222 F.3d 1142, 1147 (9th Cir. 2000) ("[C]lass counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class."); *see In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) (Easterbrook, J.) (holding that attorneys that bring a class action solely for their own benefit at the expense of the class fail to meet the adequacy requirement under Rule 23(a)(4)). Here, class counsel breached their fiduciary duty to the class because they agreed to a settlement structure that detrimentally affected the class by shifting the risk of the litigation to the class members.

Further, class counsel sold out the class by agreeing to the Reversed Outcome where the class would receive nothing. Unlike most high-low agreements that provide a range of recovery, this third outcome provides that if the Second Circuit reverses the district court's ruling, Apple will pay $0 and the plaintiffs will dismiss their claims with prejudice. AP0240. When making a high-low agreement, plaintiff agrees to the

low range as a compromise for not seeking recovery above the high range, and the low payment compensates them for the risk of losing. Here, plaintiffs agreed to a low of $0; if the Second Circuit rules that Apple is not liable, then plaintiffs take nothing. AP0240. But that is what plaintiffs would take if there had never been a settlement agreement. Indeed, the Reversed Outcome actually places plaintiffs in a worse position because it requires dismissal with prejudice of all claims even though plaintiffs' complaint includes additional claims not at issue in the Apple Appeal. If the Second Circuit holds that Apple did not violate Section 1 of the Sherman Act (15 U.S.C. § 1), that would not necessarily extinguish plaintiffs' other claims for state antitrust violations and state consumer protection violations. AP0914, AP0915. The Settlement, however, would require plaintiffs to abandon those claims. When gambling with other people's money—particularly for whom one is serving as fiduciary—such a risk is untenable.

**B.     Class counsel breached their fiduciary obligation to the class by structuring the settlement to include an unopposed, segregated fee fund that would revert excess fees to Apple.**

Class counsel breached their fiduciary duty to the class by structuring the settlement to include an unopposed, segregated fee award. AP0252, AP0254, AP0261. Clear-sailing agreements provide that opposing parties will not challenge class counsel's fee request. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). With a clear-sailing agreement, settling parties can "urge a

class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Id.* at 524.

The Settlement here includes clear-sailing of class counsel's fee request, AP0252, AP0254, AP0261, but such agreement is particularly problematic here because it is combined with a "reversion" or "kicker" agreement. *Id.* Apple agreed to pay $50 million or $20 million in attorneys' fees, but if those fees were reduced, the reduction would not return to the class, but rather revert to Apple. AP0252, AP0254, AP0261. The "reversion" or "kicker" arrangement that "revert[s] unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 949 (9th Cir. 2011). "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.*

If a settlement agreement includes a common fund for the class members, a district court can correct an excessive fee request by returning the excess to class members. *See, e.g., In re Citigroup Sec. Litig.,* 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing excessive fee request by $26.7 million for benefit of claiming class membvers). But a district court cannot make such a correction when clear-sailing fees are in a segregated fund unavailable to the class.[3]

---

[3] In *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014), the Seventh Circuit suggested that the district court should have deleted the reversion provision to allow any fee excess to return to the class.

Here, the district court held that the separate negotiation of fees was "protective of consumers' interests," but it offered no explanation of how it protected consumers. AP0017. Once the settlement amount is reached, Apple, like any economically rational defendant "ha[s] little interest in how it is distributed." *Goldberger v. Integrated Res.*, 209 F.3d 43, 52 (2d Cir. 2000); *Pearson*, 772 F.3d at 786 (economically rational defendant cares only about its total liability and is thus "indifferent to the allocation of dollars between class members and class counsel"); *Pampers*, 724 F.3d at 717 ("[T]he economic reality is that a settling defendant is concerned only with its total liability.") (quoting *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir.1998)).

In *Pearson v. NBTY*, the Seventh Circuit held in a Judge Posner opinion that there should be a strong presumption that a "kicker" clause is invalid. 772 F.3d at 787.[4] Judge Posner questioned class counsel on what benefit the separate negotiation and reversion clause provided to the class: class counsel was "left without an answer. Neither can we think of a justification for a kicker clause." *Id.* at 786-87. Instead, a clear-sailing fee agreement with a kicker to defendant is evidence of unfair self-dealing by class counsel. *Bluetooth*, 654 F.3d at 948-49. The only reason to have a reversion to

---

4 Public policy reasons also speak against reversion clauses. Reversion agreements are "a strategic effort to insulate a fee award from attack." Charles Silver, Due Process and the Lodestar Method, 74 Tulane L. Rev. 1809, 1839 (2000). Further, class members are disincentivized to object to excessive fee requests because the excess would not return to the class. *Cf. In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1130-31 (7th Cir. 1979).

Apple instead of the class is to attempt to protect an excessive fee request from scrutiny.

The Settlement shows that Apple was willing to put $450 million (recovery plus fees under the Affirmed Outcome) or $70 million (recovery plus fees under the Remand Outcome) of cash to settle the case. AP0240. "If the defendant is willing to pay a certain sum in attorneys' fees as part of the settlement package, but the full fee award would be unreasonable, there is no apparent reason the class should not benefit from the excess allotted for fees." *Bluetooth*, 654 F.3d at 949. Here, if the fee request is reduced, class counsel would be leaving that excess on the table to be recaptured by Apple. Class counsel breached their fiduciary duty by structuring the Settlement to allow such a reversion. As fiduciaries, class counsel should have fought for the class and demanded a settlement structure where any reduction in the fee request would return to the class instead of reverting to Apple.

The prejudice suffered by the class caused by class counsel's breach is not merely hypothetical. As explained below, the fee request is excessive by at least $3 to $10 million, and likely much more. Class counsel breached their fiduciary duty by allowing a structure that prevents that excess from returning to the class.

Finally, it should be noted that class counsel's breaches constitute self-dealing warning signs as identified in *Bluetooth*, 654 F.3d at 947. Together with class counsel's excessive fee request, as described further below, this Settlement contains all of the same self-dealing warning signs that caused the Ninth Circuit to strike down *Bluetooth*. *Id.* at 947 (listing warning signs to include (1) disproportionate distribution to counsel;

(2) clear sailing agreement; and (3) reversion of excess fees to the defendant) (citing, *inter alia*, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000)). Self-dealing is evidence of a violation of Rule 23(a)(4) that can require class decertification.

The Settlement must be reversed because class counsel breached its fiduciary obligations by shifting the risk of the litigation to its clients with the high-low agreement, and by including an unopposed, segregated fee award with reversion to Apple rather than the class members. These two independent breaches require reversal of the Settlement. Further, the case should be remanded with instructions to the district court to determine whether class counsel's breaches and self-dealing require the class to be decertified.

## II.    The district court erred in calculating class counsel's fee award based on exaggerated class recovery: when properly calculated, the fee award is excessive given the size of the fund and given class counsel's piggybacking off the governments' successful trial against Apple.

While the Second Circuit permits class counsel's fees to be awarded based on lodestar or percentage-of-the-fund method, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). Class counsel sought its fee award based on the percentage-of-the-fund. AP0154. The fee award, together with the recovery should be considered a "constructive common fund." *In re GM Pick-Up Truck*, 55 F.3d at 820-21 (Segregated fee structure "is, for practical purposes, a constructive common fund.").

Class counsel argued (and the district court held) that the requested percentages were reasonable because they amounted to 7% ($30 million of $400 million under the Affirmed Outcome), 17% ($10 million of $50 million under the Remand Outcome) and 0% under the Reversed Outcome. AP0164, AP0016. But class counsel's 7% and 17% calculation were artificially depressed to justify their excessive fee awards. Class counsel presented their fee request as if they were the only parties to the contract, but the Settlement was by and among the class, Apple, *and* the States. AP0240. Class counsel represents only twenty-three states; when plaintiffs filed their First Amended Consolidated Class Action Complaint, it was on behalf of those consumers in the states that were not part of the States' *parens patriae* action. AP0155; AP0593.

This means that only a *portion* of the $400 million or $50 million recovery is for the class, and is estimated by class counsel to be approximately 40%. AP0155. Class counsel's fees should be calculated based on relief provided to the *class*. *See Redman*, 768 F.3d at 630 ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what **the class members received**.") (emphasis added); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) ("[C]lass counsel's compensation must be proportioned to the incremental benefits they confer on the class, not the total benefits."). Indeed, calculating class counsel's percentage based on the entire $400 or $50 million recovery is erroneous because it fails to account for the attorneys' fees awarded to the States.

Because the district court's analysis approving the fee request was premised on this incorrect factual misstatement by class counsel, reversal is required for determination under the correct factual premises of class recovery.

The district court also clearly erred in calculating the lodestar, because it double-counted lodestar for which had already been doubly-compensated by the earlier settlement and $11.2 million in fees and expenses. Class counsel's own lodestar calculation admitted by omission that their lodestar included lodestar for which they had already been compensated. AP0157.

For the class members in the 23 states represented by class counsel, class counsel approximates class recovery at $160 million under the Affirmed Outcome, or $20 million under the Remand Outcome. AP0155. When properly calculated, class counsel's fee award amounts to 15.8% under the Affirmed Outcome or 33.3% under the Remand Outcome.[5] As explained below, these percentages are excessive given the size of the funds and given that this Settlement is a piggyback off the governments' successful trial against Apple. On remand, this Court should instruct the district court to apply a lower fee.

---

[5] Ratios were calculated using the *Redman* equation of "(1) the fee to (2) the fee plus what the class members received." *See Redman*, 768 F.3d at 630. Under the Affirmed Outcome, 15.8% = (1) $30 million fee to (2) $30 million fee + $160 million class recovery. Under the Remand Outcome, 33.3% = (1) $10 million fee to (2) $10 million fee + $20 million class recovery.

**A.    Class counsel's 15.8% or 33.3% percentage-of-the-fund fee award is excessive because they exceed the range of percentages awarded in similar megafunds.**

The Second Circuit recognizes the danger of windfalls in cases involving large funds ("megafunds") and that district courts award lower percentages to account for economies of scale. *Goldberger v. Integrated Res.*, 209 F.3d 43, 52 (2d Cir. 2000) "Obviously, it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." *Id.* (citing *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.,* 724 F. Supp. 160, 166 (S.D.N.Y. 1989)); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) ("It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case."). "There is considerable merit to reducing the percentage as the size of the fund increases. In many instances the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *NASDAQ,* 187 F.R.D. at 486 (quoting *In re First Fidelity Securities Litigation*, 750 F.Supp. 160, 164 n. 1 (D. N.J. 1990)); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090, at *20 (S.D.N.Y. Sept. 29, 2003) ("[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent.").

The 15% and 33% awards are excessive in light of the large recoveries under the Settlement. Accordingly, fees for the class recovery of $160 million under the

Affirmed Outcome should be decreased from 15% to *at least* 10%. *See* NASDAQ, 187 F.R.D. at 486 ("In cases where a class recovers more than $75-$200 million, courts weigh the economies of scale inherent in class actions in fixing a percentage to yield a recovery of reasonable fees." … "[F]ees in the range of 6-10 percent and even lower are common in megafund cases.") (citing examples); Theodore Eisenberg & Geoffrey Miller, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, 7 J. Empirical Legal Stud. 248 (2010) (finding that the mean award from settlements in the $ 100 to $ 250 million range is 12% and the median 10.2%).

And under the Remand Outcome, fees for the class recovery of $20 million should be decreased from 33% to *at least* 25%. *See Precision Assocs. v. Panalpina World Transp., Ltd.*, 2013 U.S. Dist. LEXIS 121795, *67 (E.D.N.Y. Aug. 27, 2013) (rejecting 33% of $87 million); *Craftwood Lumber v. Interline Brands, Inc.* (N.D. Ill. Mar. 23, 2015) (reducing fees from 30% request to 23.75% for fund of $40 million); *Goldberger*, 209 F.3d at 52 ("[E]mpirical analyses demonstrate that … with recoveries of between $50 and $75 million, courts have traditionally accounted for these economies of scale by awarding fees in the lower range of about 11% to 19%.").

Such reductions are also in line with application of diminishing marginal rates to megafunds. In *Silverman v. Motorola,* 739 F.3d 956, 959 (7th Cir. 2013), the Seventh Circuit recognized that decreasing marginal rates in megafund cases more accurately reflect the market. Judge Easterbrook reasoned: "Awarding counsel a decreasing percentage of the higher tiers of recovery enables them to recover the principal costs of litigation from the first bands of the award, while allowing the clients to reap more

of the benefit at the margin (yet still preserving some incentive for lawyers to strive for these higher awards). *Silverman*, 739 F.3d at 959. Applying this tiered approach, the Seventh Circuit in *In re Synthroid Marketing Litigation* recognized that class counsel had assumed a "significant risk," but ordered decreased fees for consumer class counsel of 30% of the first $10 million, 25% of the next $10 million, 22% of the band from $20 to $46 million, and 15% of everything else on a fund totaling $88 million. 325 F.3d 974, 980 (7th Cir. 2003).

Applying the same formula used in *Synthroid* to this case, and accounting for the $11.2 million class counsel had already received in its earlier settlements for $40.1 million of recovery in the 23 states with class members:

Affirmed Outcome

| Recovery Tier | Rate | Fee |
|---|---|---|
| $0 to $10 million | 30% | $3,000,000 |
| $10 to $20 million | 25% | $2,500,000 |
| $20 to $46 million | 22% | $5,720,000 |
| $46 to $70 million | 15% | $3,720,000 |
| $70 to $100 million | 12% | $3,600,000 |
| $100 to $200.1 million | 10% | $10,010,000 |
| **TOTAL** | | $28,550,000 |
| **Already awarded in Dkt. 474** | | $11,206,000 |
| **Net** | | $17,344,000 |

Remand Outcome

| Recovery Tier | Rate | Fee |
|---|---|---|
| $0 to $10 million | 30% | $3,000,000 |
| $10 to $20 million | 25% | $2,500,000 |
| $20 to $46 million | 22% | $5,720,000 |
| $46 to $60.1 million | 15% | $3,720,000 |
| **TOTAL** | | $13,335,000 |
| **Already awarded in Dkt. 474** | | $11,206,000 |
| **Net** | | $1,119,000 |

The tiered-approach in the above example results in a 14.3% recovery on a $200.1 million fund under the Affirmed Outcome, and a 22.2% recovery on a $70.1 million fund in the Remand Outcome. If the reversion clause were invalidated, *see Eubank*, 753 F.3d at 723, this would return an excess of $8.9 to $12.7 million to the class members. While class counsel assumed some risk in proceeding with this case, nothing in the record demonstrates that it was as "significant" as that assumed in *Synthroid* to justify higher marginal rates than awarded there. Indeed, as further explained below, a greater reduction is required here because the Settlement piggybacked off the governments' successful trial against Apple.

**B.     Class counsel's 15.8% or 33.3% percentage-of-the-fund fee award is also excessive because it should have been discounted for piggybacking off the governments' successful trial against Apple.**

Class counsel should not be paid for the governments' success. When awarding fees to class counsel, the district court must "separate out the benefits attributable to class counsel" and not credit them for the work of others. *In re Prudential Ins. Co. of*

*Am. Sales Practice Litig.*, 148 F.3d 283, 338 (3d Cir. 1998). Class counsel's fee award should include "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations." *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006) (citing *Prudential*, 148 F.3d at 338); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) ("[C]lass counsel's compensation must be proportioned to the incremental benefits they confer on the class, not the total benefits.").

After the governments' lengthy investigation, millions of pages in discovery, depositions of over 50 witnesses and a three-week trial involving five expert witnesses and 15 fact witnesses, the DOJ and the States won. AP0145, AP0146; *United States v. Apple, Inc.*, 952 F.Supp.2d 638, 709 (S.D.N.Y. 2013). There can be no question that the liability verdict against Apple was pivotal in obtaining a settlement here, particularly because the Settlement centers around the appeal of that verdict. And because the Settlement is piggybacking off the governments' success, class counsel's fee request should be reduced to account for the governments' efforts. *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1272 (D.C. Cir. 1993) (district court properly reduced fee award where counsel's efforts ride "piggyback" on those from an earlier case that resolved central issue); *Ortiz v. Chop't Creative Salad Co. LLC*, 2015 U.S. Dist. LEXIS 22772, *62 (S.D.N.Y. Jan. 15, 2015) (reducing fee request from 33% to 20% based, in part, because "plaintiffs' counsel apparently had 'the benefit of 'piggybacking' off of … previous case[s]") (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 122).

The district court erred in calculating the attorneys' fees at 0, 7 and 17 percent because it includes recovery not going to the class. The district court abused its discretion in approving a fee award of the properly calculated 15.8% or 33.3% fee because it falls outside the range of fee awards for similar megafunds and should have been further reduced to account for the governments' successful litigation and verdict against Apple.

## CONCLUSION

For the several independent reasons identified above, this Court should vacate and reverse the Settlement approval, holding the Settlement must be rejected. But this Court should go farther, and reverse with instructions to determine whether the class should be decertified for class counsel's inadequacy based on the several breaches of their fiduciary obligations.

Dated: April 17, 2015   */s/ Christopher A. Bandas*
        Christopher A. Bandas
        Bandas Law Firm
        Suite 1020
        500 N. Shoreline
        Corpus Christi, TX 78401
        Phone: 361-698-5200
        Email: cbandas@bandaslawfirm.com

        Attorney for Appellant Dianne Young Erwin

**PROOF OF SERVICE**

I hereby certify that on April 17, 2015, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Second Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record, with the exception of the following parties, whom I caused to be served by first-class mail.

Executed on April 17, 2015.

*/s/ Christopher A. Bandas*
Christopher A. Bandas

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. 32(a)(7)(C)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 9,896 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

Executed on April 17, 2015.

/s/ *Christopher A. Bandas*
Christopher A. Bandas