# Nos. 14-4649 (L), 14-4710 (CON)

## In the United States Court of Appeals for the Second Circuit

STATE OF ARIZONA, THE STATE OF ALASKA, THE STATE OF
ARKANSAS, STATE OF COLORADO, THE STATE OF DELAWARE,
*(caption continued inside cover)*

On Appeal from the United States District Court for the
Southern District of New York, No. 11-md-02293 (Cote, J.)

## BRIEF FOR PLAINTIFF STATES

ERIC T. SCHNEIDERMAN
Attorney General of New York

ANDREW W. AMEND
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
120 Broadway, 25th Floor
New York, New York 10271
(212) 416-8020


GEORGE JEPSEN
Attorney General of Connecticut

GARY M. BECKER
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
55 Elm Street
Hartford, Connecticut 06106
(860) 808-5040

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General

SCOTT A. KELLER
Solicitor General

J. CAMPBELL BARKER
Deputy Solicitor General

ERIC LIPMAN
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
209 W. 14th Street
Austin, Texas 78711-2548
(512) 936-1700 tel.
(512) 474-2697 fax

*Counsel for Plaintiff States*

*(caption continued)*

THE DISTRICT OF COLUMBIA, STATE OF IDAHO, STATE OF INDIANA, THE STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MARYLAND, THE COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MISSOURI, THE STATE OF NEBRASKA, THE STATE OF NEW MEXICO, THE STATE OF NORTH DAKOTA, STATE OF CALIFORNIA, STATE OF WISCONSIN, THE COMMONWEALTH OF VIRGINIA, STATE OF TEXAS, STATE OF ILLINOIS, STATE OF IOWA, STATE OF VERMONT, STATE OF TENNESSEE, STATE OF SOUTH DAKOTA, COMMONWEALTH OF PUERTO RICO, COMMONWEALTH OF PENNSYLVANIA, STATE OF OHIO, STATE OF WEST VIRGINIA, STATE OF CONNECTICUT, SHILPA GROVER, FREDRIC A. PRESS, ANTHONY PETRU, JEFFREY EVANS, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, CLARISSA WEISS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, RHONDA BURSTEIN, JUAN SOTOMAYOR, ROBERT CHEATHAM, JOHN T. MEYER, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, PAUL MEYER, PAUL J. MEYER, ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, LIANA LINGOFELT, MARCIA GREENE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, AUBRIE ANN JONES, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, DAVID YASTRAB, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, CYRUS JOUBIN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, BRIAN BROWN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, HARRISON GOLDMAN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, KEVIN RADERRHODENBAUGH, BRIAN MCGEE, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, CAROL NESS, KATRINA KEY, PATSY DIAMOND, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, MARCUS MATHIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, EUGENIA RUANEGONZALES, EUGENIA RUANEGONZALES, STEVEN RIVERS, CHRISTIAN GILSTRAP, CYNTHIA J. TYLER, THOMAS FRIEDMAN, JEREMY SHEPPECK, ALOYSIUS J. BROWN, III, ANNE M. RINALDI, LAURA J. WARNER, BARBARA HEATH, KATHLEEN LINDA PITLOCK, KATHLEEN WEISS, MATTHEW A. HOSKING, DIANE URBANEC, ED MACAULEY, RONNA HAMELIN, JAMES L. NESMITH, LAUREN ALBERT, SUE ROBERTS, SUE ELLEN GORDON, SHANE S. DAVIS, STEVEN D. CAMPBELL, CHARLES LEONARD PELTON, SR., KIMBERLY WHITESIDE BROOKS, JESSICA MOYER, ANDREAS ALBECK, REBECCA L. ROSSMAN, MIRIAM CUMMINGS, CAROLE C. KEHL, KAMAL SONTI, GRETCHEN ULBEE, CHAD MILLER, ELVIRA MONZON, SUSAN HOROWITZ, AMY D. NOLAN, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, GRACE HOKE, THE STATE OF ALABAMA, STATE OF NEW YORK, AND THE STATE OF UTAH,

*Plaintiffs-Appellees,*

UNITED STATES OF AMERICA,

*Plaintiff,*

*v.*

SIMON & SCHUSTER, MACMILLAN, INC, PENGUIN GROUP USA, INC., RANDOM HOUSE INC., APPLE INC., AMAZON.COM, INC., BARNES & NOBLE, INC., HARPERCOLLINS PUBLISHERS INC., MACMILLAN PUBLISHERS, INC., HACHETTE DIGITAL, INC., HACHETTE LIVRE USA, INC., HACHETTE LIVRE SA, HACHETTE BOOK GROUP, INC., HOLTZBRINCK PUBLISHERS, L.L.C., HARPERCOLLINS PUBLISHERS L.L.C., VERLAGSGRUPPE GEORG VON HOLTZBRINCK GMBH, THE PENGUIN GROUP, A DIVISION OF PEARSON PLC, AND SIMON & SCHUSTER,

*Defendants,*

ROBERT H. KOHN,

*Objector,*

DIANNE YOUNG ERWIN, JOHN BRADLEY,

*Objectors-Appellants.*

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................ ii

Statement of Jurisdiction ................................................................. 1

Statement of the Issues .................................................................... 1

Statement of the Case ..................................................................... 1

    A.    The District Court's Liability Finding Against Apple and
This Court's Affirmance on Appeal ........................................ 1

    B.    Apple's Settlement with the States and Class on
Damages to Compensate Injured Consumers ........................... 3

    C.    The District Court's Approval of the Settlement Over
Minimal Objections from the Plaintiff Class ........................... 4

Summary of the Argument ............................................................... 5

Argument ...................................................................................... 6

I.    Individuals Not Represented by the Plaintiff States Lack
Standing to Object to the Settlement of the Plaintiff States'
Claims ................................................................................... 6

    A.    Appellants Have Recognized Their Lack of Standing to
Challenge the States' Settlement. .......................................... 7

    B.    The Distinct Character of the States' Claims Further
Demonstrates Appellants' Lack of Standing to Challenge
the States' Settlement ......................................................... 8

II.    The Settlement Is Reasonable, Adequate, and Fair as Shown by
the Governing Multi-factor Test ............................................. 11

    A.    Anticipated complexity, duration, and expense of
additional litigation .......................................................... 13

    B.    The reaction of the settlement group ..................................... 14

    C.    The stage of the proceeding and the amount of the
discovery completed .......................................................... 15

    D.    The risks of establishing liability ......................................... 16

    E.    The risks of establishing damages ........................................ 16

    F.    The risks of maintaining the class action through trial ............. 17

    G.    The ability of the defendants to withstand a greater
judgment ......................................................................... 18

    H.    The range of reasonableness of the settlement amount in
light of the best possible recovery and all attendant risks
of litigation ..................................................................... 18

Conclusion ................................................................................... 22

Certificate of Compliance ............................................................... 24

Certificate of Service ..................................................................... 25

# Table of Authorities

Page(s)

**Cases:**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
458 U.S. 592 (1982) ................................................................. 9

*BE & K Const. Co. v. N.L.R.B.*,
536 U.S. 516 (2002) ................................................................. 9

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................... 11, 12

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................................................... 6

*Greene v. United States*,
13 F.3d 577 (2d Cir. 1994) ..................................................... 12

*Illinois v. Abbott & Assocs., Inc.*,
460 U.S. 557 (1983) ............................................................... 10

*In re American Bank Note*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................... 14

*In re Balfour MacLaine Int'l Ltd.*,
85 F.3d 68 (2d Cir. 1996) .......................................................... 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ............... 17

*In re High-Tech Emp. Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................. 17

*In re Nexium (Esomeprazole) Antitrust Litig.*,
297 F.R.D. 168 (D. Mass. 2013) ........................................... 17

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*,
117 F.3d 721 (2d Cir. 1997) ................................................... 18

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ....................... 20

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000) ..................................................... 6

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................14

*New Jersey v. New York*,
   345 U.S. 369 (1953) ...................................................................................10

*New York by Vacco v. Reebok Int'l Ltd.*,
   903 F. Supp. 532 (S.D.N.Y. 1995), *appeal dismissed*,
   96 F.3d 44 (2d Cir. 1996) ..........................................................................11

*New York by Vacco v. Reebok Int'l Ltd.*,
   96 F.3d 44 (2d Cir. 1996) .......................................................................6, 8

*New York v. Salton, Inc.*,
   265 F. Supp. 2d 310 (S.D.N.Y. 2003) ...................................................11

*Powell v. Omnicom*,
   497 F.3d 124 (2d Cir. 2007) ....................................................................8

*Purdue Pharma L.P. v. Kentucky*,
   704 F.3d 208 (2d Cir. 2013) ....................................................................9

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ..................................................................13

*United States v. Apple Inc.*,
   ___ F.3d ___, 2015 WL 3953243 (2d Cir. June 30, 2015) ................... 3, 16

*United States v. Apple Inc.*,
   952 F. Supp. 2d 638 (S.D.N.Y. 2013) ...................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..........................................................6, 13, 14

**Statutes:**

15 U.S.C. § 1 ................................................................................................ 2

15 U.S.C. § 15c ........................................................................................1, 9

15 U.S.C. § 15c(b)(2) .................................................................................10

15 U.S.C. § 26 .............................................................................................1

28 U.S.C. § 1292(a) .....................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1337(a) .....................................................................................1

Fed. R. Civ. P. 23 ........................................................................... 9

Fed. R. Civ. P. 23(a) ...................................................................... 9

Fed. R. Civ. P. 23(a)(4) ................................................................. 8

Fed. R. Civ. P. 23(e)(2) ................................................................. 8

Fed. R. Civ. P. 23(e)(5) ................................................................. 9

**Other Authority:**

4 ALBA CONTE & HERBERT B. NEWBERG,
    NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ........................... 14

## Statement of Jurisdiction

The district court's jurisdiction over the States' claims under the Sherman Antitrust Act and various state laws rested on 15 U.S.C. §§ 15c and 26 and 28 U.S.C. §§ 1331 and 1337(a). The district court entered a final judgment on November 21, 2014, and objectors-appellants timely appealed on December 17 and 19, 2014. This Court's jurisdiction is asserted under 28 U.S.C. § 1292(a).

## Statement of the Issues

1.   Whether two class members have standing to object to a settlement between the States and Apple in a separate action.

2.   Whether the district court abused its discretion in determining that the settlement with Apple was reasonable, adequate, and substantively fair.

## Statement of the Case

### A.  The District Court's Liability Finding Against Apple and This Court's Affirmance on Appeal

These two consolidated appeals—Nos. 14-4649 and 14-4710—are from the district court's denial of objections to a class's settlement of its antitrust claim against Apple Inc. The class's lawsuit is based on the same underlying events as are two other antitrust lawsuits against Apple, one brought by the United States and one brought by 31 States, the District of Columbia, and the Commonwealth of Puerto Rico (collectively, "States").

The lawsuits alleged that Apple successfully fomented an unlawful conspiracy to raise and fix the retail prices of electronic books ("e-books"). Each plaintiff alleged a violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and the States also alleged violations of state antitrust laws. The federal government sought injunctive relief only, whereas the damages suffered by consumers were claimed by the States (as to their citizens) and by a class of residents of other States. The States also sought injunctive relief.

The district court consolidated the actions for pretrial purposes and bifurcated the trial schedule for management purposes. It set a bench trial on the claims for injunctive relief (brought by the States and the United States) and a later jury trial on the claims for damages (brought by the States and the class plaintiffs).

In July 2013, following a three-week bench trial on the claims for injunctive relief, the district court issued its findings, concluding that "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act and relevant state statutes to the extent those laws are congruent with Section 1." *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 709 (S.D.N.Y. 2013) ("liability finding"). The district court subsequently entered an injunction prohibiting Apple from anticompetitive conduct and requiring corrective action and antitrust-compliance improvements. In October 2013, Apple appealed from the liability finding and injunction. Its appeals in the States' and United States' cases were consolidated as No. 13-3741. This Court has now affirmed the liability finding and injunction. *United States v. Apple Inc.*, ___ F.3d ___, 2015 WL

3953243 (2d Cir. June 30, 2015). As of this brief's filing, Apple's time for petitioning for further review has not yet expired.

## B.  Apple's Settlement with the States and Class on Damages to Compensate Injured Consumers

In March 2014, while the liability appeal was under consideration in this Court, the district court certified a class of private plaintiffs and scheduled a jury trial on damages. In June 2014, with the help of an experienced mediator, the States and class plaintiffs reached a settlement agreement with Apple on damages. *See* App.0005, App.0203. (Unless otherwise noted, "App." refers to the Appendix of Objector-Appellant Erwin, No. 14-4649(L), Doc. No. 69-2.)

The interrelationship among the related lawsuits required a settlement shaped like the one reached here. Although the state and federal governments were successful in establishing Apple's liability at the bench trial on injunctive relief, Apple's appeal placed in limbo both that liability finding and any damages that might be awarded after a jury trial based on that liability finding. Apple also made clear that any significant damages award would elicit another appeal, further delaying final resolution of this matter for potentially years to come.

Although some delay incident to resolving the liability appeal was at that point certain, the state and class plaintiffs determined that consumers' interests would be served by reducing the occasion for further lengthy delay. The settlement agreement thus eliminates risk and delay that would have ensued

from a jury trial and appeal on damages; instead, the settlement agreement pegs possible payments to the final outcome of Apple's liability appeal.[1] That resulted in a settlement agreement with the following payment scenarios:

1. *Affirmance of Liability Finding.* If the district court's liability finding is affirmed, Apple will pay $400 million in damages to consumers, $20 million to the state plaintiffs, and $30 million to the class plaintiffs for fees and costs.

2. *Remand of Liability Finding.* If the liability finding is either vacated or reversed and remanded for further proceedings, Apple will pay $50 million in damages to consumers, $10 million to the state plaintiffs, and $10 million to the class plaintiffs for fees and costs.

3. *Reversal of Liability Finding.* If the liability finding is reversed, Apple will make no payments for consumer compensation or to the state or class plaintiffs, and those plaintiffs will move to dismiss their claims with prejudice.

By accounting for these possible outcomes of the liability appeal, the settlement agreement strives to eliminate risks incumbent to establishing damages at trial and delays and risks incurred by an appeal after that trial.

## C. The District Court's Approval of the Settlement Over Minimal Objections from the Plaintiff Class

The district court granted preliminary approval to the settlement agreement in August 2014. App.0199-207. Direct notice of the settlement agreement was sent to almost 23 million consumers. Despite the large pool of consumers, only 76 people asked to be excluded from the settlement and only five objections were filed. App.0015; App.0024.

---

[1] All parties have a right to pursue all available appellate review.

The appellants are class members who objected to approval of this settlement agreement. *See* App.0038-41. Both appellants are represented by counsel who are well recognized as serial objectors to class settlements, and who chose not to participate in the fairness hearing. App.0111-12; *see* Class Pls.' Br. at 10-12, 17-24. The district court noted that their objections "have very limited relevance because they are made by professional objectors as opposed to people who have a stake in the enterprise in a way that a class member would." App.0039. Nevertheless, the district court considered the objections and ruled that they did not alter the court's analysis of the fairness, reasonableness, and adequacy of the settlement agreement. App.0040.

## Summary of the Argument

Appellants are two members of the class of e-book consumers; they have filed objections to the settlement of the class's claims. Appellants are not residents of the 33 plaintiff States, and they are not represented by the Attorneys General who represent those States. Consequently, Appellants have no standing to object to the settlement agreement insofar as it pertains to the plaintiff States. They have, at most, standing to object to the settlement of the class's claim.

And, even as to the class settlement, appellants' objections lack merit. The class settlement meets the standard for approval: It is fair, adequate, reasonable, and not a product of collusion. The district court's approval of the settlement was well supported by the record and not an abuse of discretion.

## ARGUMENT

A district court's finding that a class action settlement meets the criteria for approval is reviewed for an abuse of discretion. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also New York by Vacco v. Reebok Int'l Ltd.*, 96 F.3d 44, 49 (2d Cir. 1996) (dismissing the appeal of district court's approval of a *parens patriae* settlement for lack of jurisdiction and, in the alternative, holding that the district court did not abuse its discretion).

That means that a district court's views on a class settlement are accorded "great weight." *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000) (internal quotation marks omitted). This Court will "disturb a judicially-approved settlement only when an objector has made a clear showing that the District Court has abused its discretion." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (internal quotation marks omitted).

## I. Individuals Not Represented by the Plaintiff States Lack Standing to Object to the Settlement of the Plaintiff States' Claims.

Not only do their objections lack merit, but the objectors do not even have standing to object to the fairness of the *States'* settlement of their freestanding action. The objectors are not represented by the plaintiff States or their counsel; instead, they reside in non-plaintiff States and are therefore represented by class counsel. Accordingly, the objectors lack standing to object to the fairness of the settlement of the States' claims, and the appeal should be dismissed as to that settlement. The question whether a valid objection to the *class* settlement would affect the *States'* settlement should not be addressed in

the first instance on appeal—but need not be addressed at all, because the objections lack substantive merit. *See infra* Part II.

## A. Appellants Have Recognized Their Lack of Standing to Challenge the States' Settlement.

The objectors-appellants are Diane Young Erwin and John Bradley. Erwin was a Florida resident when she purchased e-books subject to conspiracy prices. App.0127 (residency); *see* App.0052 (claims period). Bradley was an Oklahoma resident when he did so. Bradley App. (No. 14-4710, Doc. No. 68), at 0200. Neither Florida nor Oklahoma is one of the plaintiff States, which brought claims in their *parens patriae* capacity, under 15 U.S.C. § 15c. Rather, consumers in both Florida and Oklahoma are represented in the certified class.

Accordingly, Erwin and Bradley have no standing to object to the settlement of the plaintiff States' claims. Indeed, appellants' objections below recognized that fact. Bradley explicitly stated—in an argument different from what he appears to now argue on appeal (see *infra* Part II)—that he "[o]bjects to the settlement proposed by class counsel and their fees, but does not lodge any specific objections against the settlements involving the attorney generals [sic] or their fees." *Id.* And Erwin implicitly recognized the distinction; her objection focused on (i) the adequacy of the class representatives and the amount of class attorneys' fees in relation to their contribution to the litigation and (ii) the basic fairness of the settlement. Hence, Erwin cited only Federal Rule of Civil Procedure 23 as a basis for her objection in the district court. App.0118 (Rule 23(e)(2)); App.0121 (Rule 23(a)(4)).

As appellants recognized, they lack standing to object to the settlement of claims in which they have no legal stake. *See Reebok*, 96 F.3d at 48. The States take no position on whether appellants have standing to object to the *class* settlement. But whatever standing exists does not extend to the settlement of the *States*' claims or the relief obtained by the States.[2]

## B. The Distinct Character of the States' Claims Further Demonstrates Appellants' Lack of Standing to Challenge the States' Settlement.

Even if appellants *were* residents of the plaintiff States (and they are not), they would lack an ability to claim that the States' settlement of the States' antitrust claims is unfair. Actions prosecuted by state attorneys general as *parens patriae* under 15 U.S.C. § 15c are fundamentally different from class actions brought under Federal Rule of Civil Procedure. The difference is reflected in the rights of the represented consumers to object to a proposed settlement. In a class action, a representative private party seeks to recover damages for herself and those similarly situated. By contrast, in an antitrust *parens*

---

[2] The only way in which appellants' challenges to the class settlement could have any effect on the States' settlement would be if those challenges were valid—they are not—and the settlement agreement were not severable in that regard. But the severability of the agreement is a question of contract law that has not been addressed by the district court. *Powell v. Omnicom,* 497 F.3d 124, 128 (2d Cir. 2007) (citation omitted) ("A settlement agreement is a contract that is interpreted according to the general principles of contract law."); *In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 81 (2d Cir. 1996) ("the severability of a contract is a question of the parties' intent").

*patriae* action, the State acts in three separate capacities and asserts three separate interests. First, it seeks to obtain compensation for state residents who may have been harmed by the conduct. Second, it asserts a quasi-sovereign interest in the maintenance of a free and competitive marketplace within the State. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215 (2d Cir. 2013) (citation omitted). Finally, a State asserts a sovereign interest in ensuring that its laws are not broken. *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 541 (2002) (Breyer, J., concurring in part) (referring to antitrust "treble damages" as "a considerable deterrent").

These differences in the nature of the plaintiffs are reflected in different procedural requirements. In a class action, the plaintiff must be a member of the class, and the class must satisfy requirements for numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Class members are granted an explicit right to object to any settlement that binds them. Fed. R. Civ. P. 23(e)(5). By contrast, in a *parens patriae* action, the Attorney General need not be a consumer affected by the anticompetitive conduct, and consumers in the State do not have the right to object to any settlement on the basis of any of the traditional class certification factors. As the Supreme Court explained in *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 573 n.29 (1983), the 1976 modification to the Clayton Act "permits State attorneys general the right to institute *parens patriae* suits on behalf of State residents, exempts such suits from the class action requirements of Rule 23, and

allows damages in these suits to be computed through aggregation techniques." *Id.* (internal citations omitted).

The Clayton Act does not afford consumers in a plaintiff State the right to object to *parens patriae* settlements. They may exclude themselves from any monetary relief recovered and preserve their claims against the defendants. 15 U.S.C. § 15c(b)(2). But there is no statutory authority allowing consumers to object to the settlement or to any injunctive relief sought by the State. Indeed, allowing objections to relief sought by the State in its sovereign and quasi-sovereign capacities implicates sovereign immunity under the Eleventh Amendment and offends sovereign dignity. *See New Jersey v. New York*, 345 U.S. 369, 372-73 (1953) (noting that the *parens patriae* doctrine "is a necessary recognition of sovereign dignity, as well as a working rule for good judicial administration" and that "[o]therwise, a state might be judicially impeached on matters of policy by its own subjects, and there would be no practical limitation on the number of citizens, as such, who would be entitled to be made parties").

These differences between an action by private citizens proceeding as a class and an action by the State *parens patriae* explain why the objectors—who do not reside in the plaintiff States but instead are class members—have no standing to object to the fairness of the States' settlement of their claims. Of course, even if the objectors could object to the States' settlement, that objection would fail for the reasons given by the district court—explained below.

## II.  The Settlement Is Reasonable, Adequate, and Fair as Shown by the Governing Multi-factor Test.

The district court acted correctly and was well within its discretion in finding the settlement reasonable, adequate, and fair, as required by this Court's precedents.

In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974), this Court outlined nine factors used to determine whether settlements are reasonable, adequate, and substantively fair:

1.  the complexity, expense and likely duration of the litigation;

2.  the reaction of the class to the settlement;

3.  the stage of the proceedings and the amount of discovery completed;

4.  the risks of establishing liability;

5.  the risks of establishing damages;

6.  the risks of maintaining the class action through the trial;

7.  the ability of the defendants to withstand a greater judgment;

8.  the range of reasonableness of the settlement fund in light of the best possible recovery; and

9.  the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*; *see also New York by Vacco v. Reebok Int'l Ltd.*, 903 F. Supp. 532 (S.D.N.Y. 1995) (applying *Grinnell* factors in approving settlement of a *parens patriae* antitrust action), *appeal dismissed*, 96 F.3d 44 (2d Cir. 1996); *New York v. Salton, Inc.*, 265 F. Supp. 2d 310, 313 (S.D.N.Y. 2003).

Appellants' challenge, however, does not address the *Grinnell* factors. Erwin largely objects to the class attorney's fees, which the class addresses in its brief.[3] Erwin describes the settlement as "a variation of a high-low settlement which thrusts almost all of the risk of litigation onto class members." Erwin Br. 18; *see Redman v. RadioShack Corp.*, 768 F.3d 622, 635, 637 (7th Cir. 2014). She compares the large percentage decrease in consumer damages under the remand scenario to the smaller percentage decrease in the class attorney's fees under the remand scenario. But Erwin fails to assess reduction in consumer damages under the remand scenario or reversal scenario in light of all possible litigation risks and possible outcomes, as discussed below.

Bradley, too, does not analyze the class settlement under the *Grinnell* factors. He describes the district court's decision as "premature in that the fact that the settlement will not become effective until the occurrence of a future event renders it impossible for the district court to properly analyze whether the settlement is fair and reasonable to the absent class members." Bradley Br. 10. This allegation is raised for the first time on appeal; he did not present it to the district court. *Compare* Bradley Br. 10-16, *with* Bradley App.0199-204. An appellate court will not and should not consider an issue raised for the first time on appeal. *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). And Bradley's claim is also meritless because, as discussed below, the terms of the

---

[3] Class fees were negotiated separately by class counsel and Apple. The States took no position below and take no position here on the reasonableness of class fees.

settlement under each scenario were analyzed by the district court and deemed reasonable, adequate, and fair. Moreover, as the district court noted at the approval hearing, "the notice clearly explained [the three-scenario settlement]." App.0039.

Appellants' attorneys are professional objectors looking for a payout from the class plaintiffs. To the extent appellants' arguments can be construed as objections to the differing amounts of consumer damages under each scenario in the settlement, they are without merit. As explained below in detail, the district court appropriately considered and weighed the *Grinnell* factors and concluded that the settlement was reasonable, adequate, and fair.

## A. Anticipated complexity, duration, and expense of additional litigation

"[A]ntitrust cases, by their nature, are highly complex." *Wal-Mart Stores, Inc.*, 396 F.3d at 122. This litigation was highly complex, and the complexities of this case were amplified by the bifurcated proceedings: first, the bench trial prosecuted by the United States and the States, which concluded with the district court's liability finding; and, second, a proposed jury trial on the class's and States' claims for damages.

Without a settlement of the class's and States' claims, lengthy additional litigation would have been necessary even after a liability finding in the bench trial. Plaintiffs would have been required to prepare for and conduct a jury trial on damages—taking significant time and effort. And plaintiffs would then

have been required to litigate Apple's likely appeal from any significant damages award. That appeal would likely embrace many grounds, including class certification, exclusion of expert opinions, limitations on discovery, and disputes regarding venue for trial. Indeed, the district court remarked at the fairness hearing that "[t]his litigation has been extended already by Apple's tactics and I think it would but for this settlement be extended much further because of those tactics." App.0031. The settlement agreement eliminated the costs and resources that would otherwise have been necessary to prepare for and conduct a jury trial and litigate expected additional appeals—all without the certainty of a recovery—and it did so while reducing the delay before consumer compensation.

## B. The reaction of the settlement group

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 118 (quoting 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41, at 108 (4th ed. 2002) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.")). As discussed above, direct notice of the settlement agreement was sent to almost 23 million consumers, and additional postcard, web-based, and newspaper notices were sent or made

available. Those steps ensured that a very high percentage of eligible consumers were informed about their rights relating to the settlement. In light of that exceptional notice coverage and consumer participation, it is very significant that only 76 people asked to be excluded from the settlement and that, most significantly, only five objections were filed. The district court noted the reaction of eligible consumers: "There have been under the circumstance few exclusions and few objections." App.0031.

Appellants' objections were the only two objections directed at the contingent nature of the damages scenarios in the settlement. *See* App.0114; Bradley App.0199. And the district court found that appellants' objections, "have very limited relevance because they are made by professional objectors as opposed to people who have a stake in the enterprise in a way that a class member would." App.0039. The minuscule number and unsupported nature of the objections strongly support the district court's final approval of the settlement.

## C. The stage of the proceeding and the amount of the discovery completed

This factor considers whether the litigation was developed sufficiently to provide counsel with an adequate appreciation of the merits of the case from which to fairly negotiate and settle the action. The plaintiff States had already vigorously prosecuted their liability claims through extensive discovery and a three-week bench trial. At the fairness hearing, the district court observed, "Settlement was reached essentially on the eve of trial. Full discovery, both fact and expert discovery, had taken place. The parties had many rulings."

- 15 -

App.0031. Counsel for all parties to the settlement agreement were intimately familiar with the facts, defenses, and legal precedents affecting the case.

## D. The risks of establishing liability

The district court's 160-page Opinion and Order finding liability ruled that Apple violated section 1 of the Sherman Act and relevant state antitrust statutes. Plaintiffs believed that the liability finding was well grounded in both fact and law, and that belief was recently confirmed by this Court. *Apple*, 2015 WL 3953243, at *42.

Of course, regardless of how strongly a plaintiff believes its case will succeed, any litigant faces uncertainty when an appeal is pending and the defendant has demonstrated the willingness and ability to pursue the matter through multiple levels of appeal, as was the case here. In addition to expected appeals related to any ruling from the damages trial, Apple has argued that any *res judicata* and estoppel effects of the district court's liability finding were insufficient to establish liability for the plaintiff class's claims and of limited scope in the plaintiff States' case. App.0802. The settlement agreement acknowledges that litigation uncertainty by making the recovery amounts contingent on the ultimate outcome of the liability appeal.

## E. The risks of establishing damages

As with liability, although plaintiffs strongly believed in the merits of their damages case, litigation before a jury against a formidable adversary such as Apple presented clear risks. The parties certainly disagreed on damages.

Plaintiffs relied on the calculations of a highly respected expert, Dr. Roger Noll, who analyzed and tabulated the overcharges caused by the conspiracy. *See* App.0670; App.0386. Apple, in turn, repeatedly attacked, questioned, and tried to undermine Dr. Noll's conclusions. For example, Apple filed opposition papers arguing that Dr. Noll's damages model was "fatally flawed" and cannot measure damages on a class-wide basis. App.0584.

Plaintiffs believe that Dr. Noll's calculations were well-founded, but recognize that submitting these conflicting damages analyses to a jury for consideration and resolution had inherent risks and costs. So if plaintiffs prevailed at a damages trial, Apple's appeal would pose numerous arguments that could overturn, reduce, or delay any recovery.

## F. The risks of maintaining the class action through trial

Absent a settlement, Apple clearly would have argued that a remand by this Court on the liability finding would upend the district court's class-certification decisions. District courts have rejected many of Apple's arguments opposing certified classes in the presence of pricing dynamics more complex than here, *see, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 179 (D. Mass. 2013); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2013 WL 5391159, at *6-9 (N.D. Cal. Sept. 24, 2013); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1223-26 (N.D. Cal. 2013), but Apple argued that a "fundamental paradigm shift" occurred in the standards for class certification and was likely to pursue that argument in an appeal. App.0572.

## G. The ability of the defendants to withstand a greater judgment

Apple is certainly a highly capitalized company. Plaintiff States do not assert that what is fair, reasonable, and adequate should be discounted because Apple can't withstand a greater judgment. Thus, while evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, "the converse is not necessarily true; i.e., the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). According to the district court, this factor weighed neither in favor of nor against the settlement.

## H. The range of reasonableness of the settlement amount in light of the best possible recovery and all attendant risks of litigation

The last two *Grinnell* factors are often considered together. Fundamental to analyzing a settlement's fairness is "the need to compare the terms of the compromise with the likely rewards of litigation." *Id.* at 129-30. That determination "is not susceptible of a mathematical equation yielding a particularized sum," but turns on whether the settlement falls within "a range of reasonableness." *Id.* at 130. The adequacy of the amount offered in settlement must be judged "not in comparison with the best possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiffs' case." *Id.*

Plaintiffs' expert estimated that the maximum amount of damages caused by the entire conspiracy was $280 million. *See* App.0472 (estimating damages to be $280,254,374). The maximum possible treble damages recovery from Apple, in the best of all possible contingencies, would be $674 million (after accounting for payments from other defendants). App.0538, 0550.[4] Of course, a maximum says nothing by itself, without understanding the likelihood of obtaining it as opposed to other recoveries. Given the contingent nature of the settlement, it was necessary for the district court to conduct three separate analyses to determine if the settlement reflects a "range of reasonableness" for each of the three alternative outcomes in comparison to this "best of all possible worlds" recovery amount, taking into account all relevant litigation risks.

The first contingency provides that if the liability finding is ultimately affirmed, Apple will pay $400 million for consumer compensation. In negotiating the settlement, plaintiffs acted on their belief that this was a reasonable estimate of a contingency outcome in the thick of the probability distribution. If the liability finding is ultimately affirmed, Apple alone will pay 140% of estimated single consumer damages. Total compensation to be paid to eligible consumers will be $566 million: $400 million from Apple and $166 million already recovered from the defendant publishers in earlier settlements.[5] That

---

[4] Trebling the maximum single damages and then subtracting the amount paid by the other defendants yields $674M: ($280M x 3) - $166M = $674M.

[5] This amount does not include payment of class plaintiffs' attorneys' fees and costs or the payment to the States, all of which are being paid in addition to

outcome would represent a consumer recovery of more than 200% of the maximum estimated single damages, making this one of the exceptional cases that provides consumers nationwide with double the amount of their estimated single damages. *See, e.g., In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 WL 3008808, at *9-10 (D.N.J. Nov. 9, 2005) (Finding 56% to 69% of single damages above the range of settlements routinely granted final approval).[6]

That liability had already been adjudicated at the district court level was an important consideration in the "reasonableness" analysis for this contingency. But, as discussed above, plaintiffs would still face the uncertainties of a jury determination of damages and any appeal. An approximate 33% discount from the absolute "best possible world" (a maximum treble recovery) is eminently fair and reasonable in light of these continuing risks. Indeed, at the fairness hearing the district court observed that this was "an excellent recovery for the plaintiffs." App.0033.

The second contingent payment alternative would be triggered if the liability finding is vacated or reversed and remanded for further proceedings. App.0251. In that event, Apple will pay $50 million to consumers. When combined with monies already received from prior settlements, this would allow

---

the consumer compensation and all of which represent additional benefit that plaintiffs secured on consumers' behalf.

[6] If Apple makes a payment of $400 million, eligible consumers will receive 67% of the maximum treble damages that could possibly be recovered from all defendants in this case. *See* App.0063 (at n.39); App.0033.

consumers to recover slightly more than 77% of single damages.[7] This lower payment amount properly reflects the increased litigation risks that would arise as a consequence of a negative ruling from this Court or the Supreme Court. Without the settlement, such a ruling would require the parties to re-litigate the issue of liability. This would significantly increase costs, would put plaintiffs in a more difficult litigation posture, and could significantly alter the nature of the evidence to be considered and the legal standard to be applied thereto. Those substantial risks, as well as increased risks of a jury determination of less than maximum damages, render this contingent consumer payment also well within the range of reasonable, adequate, and fair. At the fairness hearing, the district court acknowledged the risks inherent in a remand: "I think I understand why judgments were made here and particularly the judgment that it would be better for the class to get paid sooner rather than later . . . and it was combined with plaintiffs' counsel's judgment about the risks of an appeal here and their assessment." App.0033-34.

In the final scenario—if the liability finding is ultimately reversed and the case dismissed—consumers will receive nothing from this settlement. And that is exactly what consumers would receive absent a settlement if Apple fully prevails on appeal, as this contingency addresses. If the liability finding is ultimately reversed, it would make no difference what amount of damages was

---

[7] This scenario would provide consumers with 26% of a maximum treble recovery. App.0063 (at n.40).

determined by a jury or awarded by the district court: a finding of no liability would render any damages number moot.

The district court did not abuse its discretion in applying the *Grinnell* factors and concluding that, in light of all possible litigation risks and possible outcomes, each of the alternative settlement amounts is reasonable and appropriate, and that the Settlement is reasonable, adequate, and substantively fair.

## Conclusion

For the foregoing reasons, this Court should dismiss this appeal as to the plaintiff States' settlement and affirm the district court's approval of the settlement agreement.

Respectfully submitted.

Eric T. Schneiderman
Attorney General of New York

Ken Paxton
Attorney General of Texas

Andrew W. Amend
Assistant Solicitor General

Charles E. Roy
First Assistant Attorney General

Office of the Attorney General
120 Broadway, 25th Floor
New York, New York 10271
(212) 416-8020

James E. Davis
Deputy Attorney General

Scott A. Keller
Solicitor General

George Jepsen
Attorney General of Connecticut

J. Campbell Barker
Deputy Solicitor General

Gary M. Becker
Assistant Attorney General

/s/ Eric Lipman
Eric Lipman
Assistant Attorney General

Office of the Attorney General
55 Elm Street
Hartford, Connecticut 06106
(860) 808-5040

Office of the Attorney General
209 W. 14th Street
Austin, Texas 78711-2548
(512) 936-1700 tel.
(512) 474-2697 fax

*Counsel for Plaintiff States*

## CERTIFICATE OF COMPLIANCE

This brief complies with the length, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a 14-point, proportionally spaced typeface using Microsoft Word and contains fewer than 30 pages.

/s/ Eric Lipman
ERIC LIPMAN

*Counsel for Plaintiff States*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Eric Lipman
ERIC LIPMAN

*Counsel for Plaintiff States*