# Nos. 14-4649(L),

## 14-4710 (CON)

### In The United States Court Of Appeals For The Second Circuit

STATE OF ARIZONA, THE STATE OF ALASKA, THE STATE OF
ARKANSAS, STATE OF COLORADO, THE STATE OF DELAWARE,
*(caption continued inside cover)*

On Appeal from the United States District Court for the
Southern District of New York, No. 11-md-02293 (DLC)
Hon. Denise L. Cote, U.S. District Judge

## CLASS PLAINTIFFS-APPELLEES' BRIEF

Steve W. Berman
HAGENS BERMAN SOBOL
    SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292

Kit A. Pierson
Jeffrey Dubner
COHEN MILSTEIN SELLERS
    & TOLL PLLC
1100 New York Avenue NW
Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600

Jeff D. Friedman
Shana Scarlett
HAGENS BERMAN SOBOL
    SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Douglas Richards
COHEN MILSTEIN SELLERS
    & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797

*Attorneys for Class Plaintiffs-Appellees*

*(caption continued)*

THE DISTRICT OF COLUMBIA, STATE OF IDAHO, STATE OF INDIANA, THE STATE OF KANSAS,
STATE OF LOUISIANA, STATE OF MARYLAND, THE COMMONWEALTH OF MASSACHUSETTS,
STATE OF MICHIGAN, STATE OF MISSOURI, THE STATE OF NEBRASKA, THE STATE OF NEW
MEXICO, THE STATE OF NORTH DAKOTA, STATE OF CALIFORNIA, STATE OF WISCONSIN,
THE COMMONWEALTH OF VIRGINIA, STATE OF TEXAS, STATE OF ILLINOIS, STATE OF IOWA,
STATE OF VERMONT, STATE OF TENNESSEE, STATE OF SOUTH DAKOTA, COMMONWEALTH
OF PUERTO RICO, COMMONWEALTH OF PENNSYLVANIA, STATE OF OHIO, STATE OF WEST
VIRGINIA, STATE OF CONNECTICUT, SHILPA GROVER, FREDRIC A. PRESS, ANTHONY PETRU,
JEFFREY EVANS, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,
CLARISSA WEISS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,
RHONDA BURSTEIN, JUAN SOTOMAYOR, ROBERT CHEATHAM, JOHN T. MEYER, ON BEHALF
OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, PAUL MEYER, PAUL J. MEYER, ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED, LIANA LINGOFELT, MARCIA GREENE, ON
BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, AUBRIE ANN JONES, ON
BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, DAVID YASTRAB, ON
BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, CYRUS JOUBIN, ON BEHALF
OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, BRIAN BROWN, ON BEHALF OF
HIMSELF AND ALL OTHERS SIMILARLY SITUATED, HARRISON GOLDMAN, ON BEHALF OF
HIMSELF AND ALL OTHERS SIMILARLY SITUATED, KEVIN RADERRHODENBAUGH, BRIAN
MCGEE, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, CAROL NESS,
KATRINA KEY, PATSY DIAMOND, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED, MARCUS MATHIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED, EUGENIA RUANEGONZALES, EUGENIA RUANEGONZALES, STEVEN
RIVERS, CHRISTIAN GILSTRAP, CYNTHIA J. TYLER, THOMAS FRIEDMAN, JEREMY SHEPPECK,
ALOYSIUS J. BROWN, III, ANNE M. RINALDI, LAURA J. WARNER, BARBARA HEATH,
KATHLEEN LINDA PITLOCK, KATHLEEN WEISS, MATTHEW A. HOSKING, DIANE URBANEC,
ED MACAULEY, RONNA HAMELIN, JAMES L. NESMITH, LAUREN ALBERT, SUE ROBERTS,
SUE ELLEN GORDON, SHANE S. DAVIS, STEVEN D. CAMPBELL, CHARLES LEONARD PELTON,
SR., KIMBERLY WHITESIDE BROOKS, JESSICA MOYER, ANDREAS ALBECK, REBECCA L.
ROSSMAN, MIRIAM CUMMINGS, CAROLE C. KEHL, KAMAL SONTI, GRETCHEN ULBEE,
CHAD MILLER, ELVIRA MONZON, SUSAN HOROWITZ, AMY D. NOLAN, ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY SITUATED, GRACE HOKE, THE STATE OF ALABAMA,
STATE OF NEW YORK, AND THE STATE OF UTAH,

*PLAINTIFFS-APPELLEES*,

UNITED STATES OF AMERICA,

*PLAINTIFF*,

*v.*

SIMON & SCHUSTER, MACMILLAN, INC, PENGUIN GROUP USA, INC., RANDOM HOUSE INC.,
APPLE INC., AMAZON.COM, INC., BARNES & NOBLE, INC., HARPERCOLLINS PUBLISHERS
INC., MACMILLAN PUBLISHERS, INC., HACHETTE DIGITAL, INC., HACHETTE LIVRE USA,
INC., HACHETTE LIVRE SA, HACHETTE BOOK GROUP, INC., HOLTZBRINCK PUBLISHERS,
L.L.C., HARPERCOLLINS PUBLISHERS L.L.C., VERLAGSGRUPPE GEORG VON HOLTZBRINCK
GMBH, THE PENGUIN GROUP, A DIVISION OF PEARSON PLC, AND SIMON & SCHUSTER,

*DEFENDANTS*,

ROBERT H. KOHN,

*OBJECTOR*,

DIANNE YOUNG ERWIN, JOHN BRADLEY,

*OBJECTORS-APPELLANTS.*

# TABLE OF CONTENTS

I.  JURISDICTIONAL STATEMENT ...................................................1

II. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...................1

III. STATEMENT OF THE CASE ......................................................3

    A.  Procedural History.............................................................3

    B.  Settlement Terms.............................................................6

    C.  Objectors ....................................................................10

    D.  The Fairness Hearing and Approval ..................................11

IV. STATEMENT OF THE STANDARD OF REVIEW ...............................12

V.  SUMMARY OF ARGUMENT..................................................13

VI. ARGUMENT.......................................................................18

    A.  Ms. Erwin Is Represented by a Serial Objector Who Failed to Appear Before the District Court at His Client's Deposition ..........................18

    B.  At Deposition, Ms. Erwin Testified She Agreed with the Terms of the Settlement ...........................................................................22

    C.  The District Court Correctly Held the Settlement Was Fair and Reasonable for Consumers................................................24

        1.  The District Court Correctly Weighed the Substantive Fairness of the Settlement Under the *Grinnell* Factors..........................25

        2.  Structuring the Settlement Agreement Based on the Outcome of the Liability Appeal Was Not a Breach of Class Counsel's Fiduciary Duty ........................................................28

3.   Approval of the Settlement Was Not Premature Given that Discovery Was Closed and the Case Was Mere Weeks Away from Trial .............................................................................. 35

D.   Ms. Erwin's Objections to Class Counsel's Fees Are Meritless ........ 38

1.   The District Court Correctly Held that Class Counsel's Attorneys' Fees Were Reasonable Under the *Goldberger* Factors ...................................................................................... 39

2.   Class Counsel's Fee Request Is Reasonable, And the Second Circuit Has Not Created a "Fee Cap" Rule in Supposed "Megafund" Cases .................................................................. 43

3.   Agreeing to Fees as a Separate Provision from the Common Fund Was Not a Breach of Class Counsel's Fiduciary Duty ... 49

4.   The Class Did Not "Piggyback" off the Government's Successful Trial, and Thus, Class Counsel's Fee Request Should Not Be Discounted ....................................................... 54

VII.  CONCLUSION ............................................................................. 56

-ii-

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*Blessing v. Sirius XM Radio, Inc.*,
  2012 U.S. App. LEXIS 25987 (2d Cir. Dec. 20, 2012)......................2, 18, 51, 52

*Churchill Vill., LLC v. Gen. Elec. Co.*,
  361 F.3d 566 (9th Cir. 2004) .................................................................27

*Conroy v. 3M Corp.*,
  2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006) .................................19

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ...........................................................13, 18, 27

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .............................................................passim

*Embry v. ACER Am. Corp.*,
  2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) .................................................19

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ...............................................................52

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ...............................................................passim

*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ...............................................................52

*Hayes v. Harmony Gold Mining Co. Ltd.*,
  2013 U.S. App. LEXIS 1941 (2d Cir. 2013) ...............................................38, 46

*Hoops v. Watermelon City Trucking, Inc.*,
  846 F.2d 637 (10th Cir. 1988) .........................................................29, 37

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2009 WL 3077396 (E.D.N.Y Sept. 25, 2009) ...................................................47

010260-11 778281 V2

*In re Bank of Am. Corp. Secs., Derivative, and Emp. Ret. Income Sec. Act*
  *(ERISA) Litig. v. Pub. Pension Funds*,
  772 F.3d 125 (2d Cir. 2014) ...................................................................38, 46

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935, 945 (9th Cir. 2011) .....................................................................52

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  281 F.R.D. 531 (N.D. Cal. 2012)................................................................10, 19

*In re Cendant Corp. Prides Litig.*,
  243 F.3d 722, 742 (3d Cir. 2001) ......................................................................47

*In re Countrywide Fin. Corp. Customer Data Sec.Breach Litig.*,
  2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)...................................................47

*In re Freddie Mac Sec. Litig.*,
  No. 03-CV-4261 (JES), slip. op. (S.D.N.Y. Oct. 27, 2006) .............................47

*In re Gen. Elec. Co. Sec. Litig.*,
  998 F. Supp. 2d 145 (S.D.N.Y. 2014) ...............................................................18

*In re Hydroxycut Mktg. & Sales Practices Litig.*
  2013 WL 5275618 (S.D. Cal. Sept. 17, 2013)............................................18, 22

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  2014 U.S. Dist. LEXIS 27670 (S.D. Cal. Mar. 3, 2014) ..................................20

*In re Initial Pub. Offering Secs. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...............................................................46

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ..............................................................................12

*In re The Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) .......................................................................47

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D. N.Y. 1998) .....................................................................47

010260-11 778281 V2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ................................................................27

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) .........................................31

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...................................................................47

*In re Synthroid Mktg. Litig.*
  264 F.3d 712 (7th Cir. 2001) .......................................................................48, 49

*In re Synthroid Mktg. Litig.*,
  325 F.3d 974 (7th Cir. 2003) ...............................................................................49

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................26

*In re Vitamins Antitrust Litig.*,
  2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) .......................................47

*In re World Trade Ctr. Disaster Site Litig.*,
  754 F.3d 114 (2d Cir. 2014) ................................................................................46

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ................................................................................13

*Kraebel v. New York City Dep't of Housing Pres. and Dev.*,
  959 F.2d 395 (2d Cir. 1992) ................................................................................35

*Krumme v. Westpoint Stevens Inc.*,
  238 F.3d 133 (2d Cir. 2000) ................................................................................35

*Kurzweil v. Philip Morris Cos.*,
  1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999)....................................47

*Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*,
  623 F. Supp. 2d 713 (S.D. W. Va. 2009)............................................................47

*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985) ...............................................................2, 3, 18, 51

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010) .............................................................................13

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009) .............................................................................12

*Muhammad v. Nat'l City Mortg., Inc.*,
2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008) .............................................47

*O'Keefe v. Mercedes-Benz USA, LLC*,
214 F.R.D. 266 (E.D. Penn. 2003).....................................................................21

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) .....................................................................53, 52

*Redman v. Radioshack Corp.*,
768 F.3d 622 (7th Cir. 2014) .........................................................32, 33, 34, 53

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000)..................................................................21

*Silverman v. Motorola Solutions, Inc.*,
739F.3d 956 (7th Cir. 2013) .............................................................................49

*Smalbein v. City of Daytona Beach*,
353 F.3d 901 (11th Cir. 2003) ....................................................................29, 37

*United States v. Quinones*,
313 F.3d 49 (2d Cir. 2002) ................................................................................36

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ..........................................................................46

*Wal-Mart Stores, Inc. v. Visa U.S.A Inc.*,
396 F.3d 96 (2d Cir. 2005) .........................................................................37, 47

*Weinberger v. Great N. Nekoosa Corp.*,
925 F.2d 518 (1st Cir. 1991)..............................................................................52

010260-11 778281 V2

## FEDERAL STATUTES

Class Action Fairness Act of 2005, 28 U.S.C. §§ 1712(a) .....................................33

## SECONDARY AUTHORITIES

Marie Leary, *Study of Class Action Objector Appeals in the Second, Seventh, and Ninth Circuit Court of Appeals* .................................................................20

010260-11 778281 V2

# I.    JURISDICTIONAL STATEMENT

The named class representatives, Anthony Petru, Thomas Friedman and Shane S. Davis ("Plaintiffs"), agree with the Jurisdictional Statements of Objector-Appellants John Bradley and Ms. Dianne Young Erwin, except to the extent that Ms. Erwin claims that this case is brought under the Clayton Act, Sherman Act and state antitrust and consumer protection laws. Erwin Br. at 1.[1] The operative class complaint alleges only claims under the Sherman Act. AP0667.[2]

# II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Having presided over a three week bench trial and determining Apple's liability, did the District Court abuse its discretion by finding to be fair and reasonable a settlement reached only weeks before a second trial against Apple and approved by Plaintiffs, Class Counsel, and 33 State Attorneys General, where the District Court considered the full record of the entire, extensive litigation history and damages claimed to be caused by defendants' conspiracy and the risks of trial and appeal?

---

[1] "Erwin Br." refers to the Brief of Objector-Appellant Dianne Young Erwin, Apr. 20, 2015, ECF No. 73.

[2] "AP" refers to the Appendix of Objector-Appellant Dianne Young Erwin, Apr. 20, 2015, ECF Nos. 74-78.

2.     Did the District Court abuse its discretion by approving a settlement contingent upon the appellate decision in a closely related case decided by the same District Court, particularly in light of the fact that Plaintiffs' analysis of the likely outcome of that appeal was correct?

3.     Given that the District Court fully considered Class Counsel's participation in the litigation under the *Goldberger* factors, including Class Counsel's unique contribution to the litigation in addition to the government attorneys' participation, did the District Court abuse its discretion in awarding attorneys' fees?

4.     The District Court assessed attorneys' fees based on the recovery allocated to consumers in the 23 class states Class Counsel represents, and approved attorneys' fees totaling 17, 26 or 0 percent under the three appeal outcome scenarios. Given that each percentage falls within ranges repeatedly approved by this Court and others in comparable litigation, was the District Court's decision an abuse of discretion?

5.     Is a separately negotiated provision for attorneys' fees valid, as approved by this Court in *Blessing v. Sirius XM Radio, Inc.*,[3] and *Malchman v.*

---

[3] *Blessing v. Sirius XM Radio, Inc.*, No. 11-3696-cv, 2012 U.S. App. LEXIS 25987 (2d Cir. Dec. 20, 2012), *cert. denied*, *Martin v. Blessing*, _U.S. _, 134 S. Ct. 402 (2013).

*Davis*,[4] where the District Court explicitly endorsed such a provision before settlement and where the structure of the settlement facilitated resolving all issues in a multi-party litigation between Apple Inc., the Class Plaintiffs, and the State Attorneys General?

### III.   STATEMENT OF THE CASE

This settlement resolves uniquely structured litigation involving the State Attorneys General of thirty-one states, Puerto Rico, and the District of Columbia (approximately 60 percent of e-book commerce), class plaintiffs representing the remaining 19 states and four U.S. territories (approximately 40 percent of e-book commerce), and the defendant, Apple Inc. AP0156. The settlement came after three years of litigation, and was reached mere weeks before a scheduled second trial, after the close of fact and expert discovery, certification of a class, *Daubert* rulings on all experts (and on which Plaintiffs prevailed), denial of various motions for reconsideration or interlocutory review, and full briefing of summary judgment. AP022.

### A.   Procedural History

Plaintiffs began investigating this case in April 2010, after defendants simultaneously raised e-book prices, and filed suit in August 2011. At the time

---

[4] *Malchman v. Davis*, 761 F.2d 893, 905 (2d Cir. 1985).

Class Plaintiffs filed suit, no government proceeding was on file and no government entity indicated publicly it intended to proceed with an action. AP0218. Approximately five months after Plaintiffs initiated suit, the DOJ and States filed suit. Once all three cases were on file, and the Court appointed Class Counsel, the three plaintiff groups coordinated closely (nearly daily) on all discovery and other pretrial matters involving the defendants and dozens of third parties. The plaintiff groups agreed to allocate primary responsibility for different aspects of the litigation – with each retaining a role and participation in all matters. For example, Plaintiffs led matters such as obtaining the voluminous transactional data from defendants and third parties on which expert reports would be based and took the lead on depositions of certain key executives and (taking and defending) expert economists. AP0034-35, AP0145-146.

After extensive, coordinated discovery in the three actions, which included reviewing hundreds of thousands of pages of documents, deposing more than thirty witnesses, and compiling one of the largest transactional record (e-book sales) databases in modern antitrust litigation, and after all publisher defendants had settled, the District Court oversaw a bench trial between Apple and the two groups of government entities in June 2013 and found that Apple had violated the

-4-

Sherman Act. AP0145-46. The class action continued for a year after the liability trial, including extensive expert discovery and motions practice. AP0147-150.

Class Plaintiffs filed a joint expert report with the Plaintiff States, to which Apple responded with two experts of its own; a reply and sur-replies by Apple followed. AP0147-49. Class Plaintiffs' expert, Dr. Roger Noll, estimated that the conspiracy caused approximately $280 million in damages nationwide; after trebling and offsets for prior settlements, the maximum possible recovery if Plaintiffs prevailed on all issues was approximately $673 million. AP0033.

At the same time, Class Plaintiffs filed a motion for class certification, two motions to exclude Apple's experts, and a motion for summary judgment, along with various ancillary briefing. AP0149-53. Apple, for its part, filed "motion upon motion that had varying degrees of merits and filed a string of appeals," as the District Court summarized. AP0029. In addition to opposing each of Plaintiffs' motions, Apple filed its own motion to exclude Plaintiffs' expert, moved to remand the multidistrict litigation to transferor jurisdictions, moved to reconsider the District Court's class certification ruling, filed multiple stay petitions, and sought interlocutory review from this Court (a petition that was denied within hours of argument). AP0148, AP0151-53. Then, on the eve of trial and with Plaintiffs' fully briefed summary judgment motion pending, and after extended mediation overseen

by the widely respected mediator Antonio Piazza, Apple agreed to jointly settle the

Class and State actions. AP0182-83.

**B.     Settlement Terms**

The settlement provided for three possible recovery scenarios to U.S.

consumers, based on the outcome of Apple's appeal in the related action (*United*

*States v. Apple Inc.*) which determined Apple's liability under the Sherman Act

(the "Liability Finding"):[5]

- *Scenario #1*: If this Court upheld the Liability Finding in *United States v. Apple Inc.*, consumers would recover $400 million and Apple would pay $20 million to Plaintiff States and $30 million to Class Counsel for attorneys' fees and expenses;

- *Scenario #2*: If this Court remanded the Liability Finding for reconsideration or retrial, consumers would recover $50 million and Apple would pay $10 million to Plaintiff States and $10 million to Class Counsel for attorneys' fees and expenses.

- *Scenario #3*: If the Liability Finding were reversed and the case were dismissed, Apple would make no payments to consumers, Plaintiff States or Class Counsel.

AP0251-52.

As Plaintiffs explained to the District Court in seeking settlement approval,

they and the Plaintiff States structured the settlement based in part on their analysis

---

[5] "Liability Finding" refers to the Opinion and Order, *United States v. Apple Inc.*, Case No. 12-cv-02826 (S.D.N.Y. July 10, 2013), ECF No. 326.

of the likelihood that this Court would affirm the Liability Finding. AP0202. Based on their intimate knowledge of the facts of the case and Apple's arguments, and the legal strengths of the District Court's opinions, Plaintiffs believed that affirmance was far and away the most likely outcome. On June 29, 2015, this Court affirmed the Liability Finding, proving Plaintiffs' analysis and judgment correct and placing the case in Scenario 1, barring reversal *en banc* or by the Supreme Court if Apple elects to continue to challenge the District Court and Second Circuit's findings.

Over 300 pages of legal analysis (first by the District Court and now by this Circuit) strongly signals the likely outstanding result for consumers: ***over 200 percent of their damages***, an unprecedented amount in an antitrust settlement. AP0062, AP0472-74. Moreover, even had this Court remanded the Liability Finding in a way that jeopardized it and triggered Scenario 2, consumers would still recover 77 percent of their damages, a tremendous recovery in any case and particularly in a case where the appellate court would have rejected the principal theories of liability. AP0161. The class would have recovered nothing under Scenario 3, the Reversed Scenario, but this would have merely reflected this Court or the Supreme Court decided Apple did not violate the Sherman Act.

The distribution to the class (and all consumers) is innovative, allowing automatic credits and checks to be issued to all consumers for whom retailers have

sufficient information. For most of the class, automatic credits will be issued to their e-book retailer account (through Amazon, Barnes & Noble, Apple or Kobo). AP0065. A small number of class members for whom the necessary electronic information is not available will automatically receive checks, or will have the opportunity to file claims to receive a check. AP0065-66. The credits may be used for any goods, and are not limited to e-book purchases. AP0253. This unprecedented distribution to millions of consumers has already been successfully deployed to distribute monies from settlements between the class and State Attorneys General with the five publisher defendants in this case. AP0064. Moreover, the parties were able to provide the District Court (and consumers) with a valuation of the per-book recovery by any consumer under each of the scenarios, so that the District Court and class members could evaluate exactly how much money individuals would receive. AP0927.

In addition to the direct monetary benefits, settlement on the eve of trial benefited the class in at least two additional ways. First, it recognized that the outcome of the liability appeal in *United States v. Apple Inc.* would significantly impact the outcome of the damages trial. AP0029. If the liability ruling was reversed, so too would a successful damages outcome for Plaintiffs, which depended in part on the collateral estoppel effects from the first trial. Second, it

provided consumers with relief far sooner than could be expected if litigation continued. AP0029. Apple could have still appealed the results from the damages trial if it lost, including the certification of the class and numerous other pretrial rulings.

The parties separately negotiated attorneys' fees for the State Attorneys' General and Class Counsel. This was guided by previous settlements and the District Court's approval. At the fairness hearing approving the prior Macmillan and Penguin settlements with the Class and the State Attorneys General, the District Court expressly commended the parties for negotiating attorneys' fees separately from consumer recovery:

> I want to note that the attorneys' fees amounts were separately negotiated from the amounts that would go to consumers. I think this was very protective of consumers' interests and I want to commend all counsel for agreeing to do it that way. I appreciate both plaintiffs' counsel and defense counsel approaching it in that phased process. Of course, I also have the benefit of my colleague, Judge Wood, supervising to some extent the settlement discussions here. And that gives us added confidence in the integrity of the settlement process.

SAP046.

The parties acted similarly for this settlement, ultimately agreeing to the attorneys' fees provisions described above.

## C. Objectors

Despite the extensive publicity surrounding this litigation and the receipt of direct email notice by tens of millions of consumers, only four individuals filed objections. Two objected to the existence of the litigation and two objected to the attorneys' fees sought by Class Counsel (but not the State Attorneys General). AP0038-39. Because the first two objectors did not appeal the settlement approval, only the last two, who objected to attorneys' fees, are at issue.

As the District Court noted, both of these objections "are made [] by professional objectors as opposed to people who have a stake in the enterprise in a way that a class member would." AP0039. Indeed, Ms. Erwin's objection was filed by Christopher Bandas, who, as discussed below, "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."[6] Mr. Bradley's objection was filed by Steve Miller, another professional objector who simply filed "a piggyback [] shorter version of Mr. Bandas's brief." AP0039. Both objections largely consisted of

---

[6] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted).

boilerplate arguments that could be leveled against any class action settlement, including many flatly incorrect statements of the law and facts. SAP067.[7]

## D.     The Fairness Hearing and Approval

The District Court held a fairness hearing on November 21, 2014. AP0020-41. After detailing and analyzing the factors enumerated by this Court in *Detroit v. Grinnell Corp.*[8] at length, the District Court approved the settlement as fair, reasonable, and adequate. AP0029-34. The District Court also approved the fees awarded to the State Attorneys General under the settlement, then assessed Class Counsel's attorneys' fees pursuant to *Goldberger v. Integrated Res., Inc.*[9] and found them to be reasonable. AP0030, AP0034-40. The District Court calculated attorneys' fees based on the amounts payable to class members in the 23 class states and territories, and assessed the reasonableness based on the Apple settlement and the prior settlements with the five publishers (including a prior award of attorneys' fees). AP0027. Based on the potential total recovery paid to class members from all defendants, the District Court calculated the fee award to be 17 percent under Scenario 1 (the Affirmed Scenario), 26 percent under Scenario

---

[7] "SAP" refers to Class Plaintiffs-Appellees' Supplemental Appendix concurrently filed herewith.

[8] *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

[9] *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

2 (the Remand Scenario) and 22 percent under Scenario 3 (the Reversed Scenario). AP0028. The District Court found under any scenario the range was well within the accepted range in similar cases, and entirely in line with what the Court anticipated. AP0018, AP0036.

The District Court considered Ms. Erwin and Mr. Bradley's objections, noting that they "have very limited relevance" and that Ms. Erwin's objection in particular "has extraordinarily little validity." AP0039. The District Court then considered and rejected the objectors' principal arguments. AP0039-40. Neither the objectors nor their counsel appeared at the hearing. AP0040-41.

## IV.    STATEMENT OF THE STANDARD OF REVIEW

A district court's approval of a class action settlement is reviewed for abuse of discretion.[10] A district court abuses its discretion when its decision rests on an error of law or a clearly erroneous factual finding, or when its decision cannot be located within the range of permissible decisions.[11] In class settlement cases, the trial judge's views are accorded "great weight" because of her position "on the firing line," where she is "exposed to the litigants, and their strategies, positions

---

[10] *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009).

[11] *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011).

and proofs,"[12] and this Court has stated it will "disturb a judicially-approved settlement only when an objector has made a clear showing that the District Court has abused its discretion."[13]

A district court's award of attorneys' fees is also reviewed for abuse of discretion, and reversed only if the decision rested on an error of law or a clearly erroneous finding of fact, or was not otherwise "within the range of permissible decisions."[14] The review of fee decisions is especially deferential because the district court "'is intimately [more] familiar with the nuances of the case, [and thus] is in a far better position to make [such] decisions.'"[15]

## V.    SUMMARY OF ARGUMENT

This Court recognizes that in approving a settlement in a class action, the views of the district court judge should be afforded "great weight."[16] Never should this be more true than here. Judge Cote oversaw this complex multi-district

---

[12] *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000) (internal quotation marks and citation omitted).

[13] *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (internal quotation marks and citation omitted).

[14] *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010).

[15] *Goldberger*, 209 F.3d at 48 (internal citation omitted; alteration added and in original).

[16] *Joel A.*, 218 F.3d at 139.

litigation for over three years, as well as the related governmental actions against Apple and its coconspirators. The settlement and the requested fees were viewed as fair, reasonable, and adequate not only by Judge Cote, Plaintiffs, and Class Counsel, but by the 33 State Attorneys General who jointly negotiated the settlement with Class Counsel, signed onto the settlement, and advocated for its approval. Neither objector argued that the payments to the States were improper. Nor do the objectors dispute that the settlement amounts as a percentage of damages are unprecedented in antitrust class actions, obtaining ***200 percent of damages*** if this Court affirmed the Liability Finding – the outcome Class Counsel believed most likely, an assessment that proved correct – and 77 percent of damages even if the Court rejected Plaintiffs' theory of liability and remanded the case for retrial or reconsideration.

Instead, the objectors argue principally that Judge Cote misunderstood the case and its complexity, and misunderstood the fee amounts she was awarding. Rather than discuss the factors that this Court has directed courts to assess, the objectors create arguments based on several flatly false statements. For example, the objectors falsely claim that Plaintiffs withheld information, even though Plaintiffs explicitly included the information in their brief; and that Judge Cote ignored calculations – even though Judge Cote expressly made these calculations

-14-

on the record. Similarly, the objectors, with no knowledge whatsoever of the daily working relationship with government counsel, falsely claim Class Counsel's work was mere "piggybacking." Erwin Br. at 25. The objectors singularly ignore that Judge Cote was best positioned to assess Class Counsel's contributions – the professional objectors blithely concoct their own story. The objectors likewise ignore the 33 State Attorneys General who signed onto the settlement. These frivolous assertions are demeaning to the thousands of hours committed to this important case – and even more importantly, patently untrue.

These serial, profit-seeking objectors lob a series of manufactured criticisms at the settlement and Class Counsel, making empty claims of breaches of fiduciary duty and requesting decertification of the class. Their inconsistent arguments are startling – on the surface they claim to be protecting class members, but underneath they seek to undo one of the most favorable settlements for consumers in the history of antitrust litigation.  In truth, the attorneys for the objectors are hoping for what they have achieved in other cases – to delay or threaten the success of a case in exchange for a payoff.  While Class Counsel have the track record and wherewithal to withstand their tactics, class members should not be punished with undelay due to these tactics, nor should this Court be burdened with their scheme here.

010260-11  778281 V2

Class Counsel are two nationally recognized law firms, both experts in the field of antitrust litigation. Hagens Berman has litigated some of the most complex antitrust cases in recent decades, including as co-lead counsel in *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-cv-05238 (E.D.N.Y.), which recovered over $3 billion for class members. Cohen Milstein has been one of the nation's leading class action firms for more than forty years, recently winning a $400 million (pre-trebling) jury verdict against Dow Chemical Co. in *In re Urethane Antitrust Litig.*, No. 04-md-1616 (D. Kan.), on top of $139 million in settlements with other defendants. AP0162-63.

In approving the settlement, the District Court recognized that "[f]ew firms are equipped with the resources and skills to pursue litigation of this complexity and against such well funded defendants." AP0038. Moreover, as the District Court recognized, Class Counsel took the lead roles on multiple key discovery issues for the three consolidated cases, then successfully battled Apple in "motion after motion" to get a class certified, exclude Apple's experts, have the interlocutory appeal denied, and succeed in other crucial and hotly contested matters. AP0035.

And if there needed to be support in addition to Class Counsel's experience and judgment to buttress a fairness determination of this settlement, the District

-16-

Court had such additional support. Class Counsel entered into this settlement jointly with 33 State Attorneys General as their co-plaintiffs. Class Counsel represent approximately 40 percent of e-book commerce, and the State Attorneys General represent approximately 60 percent. AP0156. Consumers in all states will recover equally under the terms of this settlement based on the number of their e-book purchases.

The accusations of self-dealing come from Ms. Dianne Young Erwin's attorney, Christopher Bandas, a serial objector. In fact, Ms. Erwin herself did not object to – *but instead agreed with* – the terms of the settlement (to the extent she even knew what they were) at her deposition. She testified that 20 percent attorneys' fees (approximately what is requested by Class Counsel here) would be a fair result. AP0107-108. Ms. Erwin's objection is little more than a fabricated set of "concerns" by a professional objector, Mr. Bandas, who has been excoriated by other federal courts for his practice of filing objections and extorting payment from class counsel. These concerns are untethered to the actual terms of this settlement and fail to reconcile any of the binding authority issued by this Court over the last decade. For example, relying almost entirely on Seventh Circuit case law in an inapplicable factual context, Ms. Erwin studiously avoids grappling with this

-17-

Court's instructions that separate provisions governing attorneys' fees (apart from the common fund) are acceptable, if the fees themselves are fair and reasonable.[17]

This Court has stated it will disturb the approval of a settlement only where an objector has made a "clear showing" that the District Court abused its discretion.[18] No such showing has been made here.

## VI.    ARGUMENT

### A.    Ms. Erwin Is Represented by a Serial Objector Who Failed to Appear Before the District Court at His Client's Deposition

Ms. Erwin's attorney, Christopher A. Bandas, "is a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country." SAP083. He has objected in dozens of cases, frequently earning criticism or sanctions from the courts faced with his manufactured objections.[19] As one court explained, "Bandas routinely represents objectors

---

[17] *See, e.g.*, *Blessing*, 2012 U.S. App. LEXIS 25987, at *6-7; *Malchman*, 761 F.2d at 905.

[18] *D'Amato*, 236 F.3d at 85.

[19] *See, e.g.*, *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) ("[Objector's] relationship with Bandas, a known vexatious appellant, further supports a finding that [objector] brings this appeal in bad faith."); *In re Hydroxycut Mktg. & Sales Practices Litig.* ("*Hydroxycut I*"), No. 09-md-2087, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (finding "credible" testimony that Mr. Bandas told plaintiffs' counsel that he "didn't care about changing one word of the settlement" and "that he was willing to wager that [plaintiff] would gladly pay him somewhere in the neighborhood of $400,000 to make his objection

purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."[20] As another court explained, he is a "professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'" SAP084.

A recent declaration filed in the Seventh Circuit sheds further light on Mr. Bandas's behind the scene schemes. A declaration filed by his co-counsel, Theodore Frank, explains what many courts had already recognized: Mr. Bandas regularly files appeals for the purpose of extracting payments from class counsel rather than to protect class members. Mr. Frank describes Mr. Bandas as a "for-profit objector[] who voluntarily dismiss[es] the vast majority of [his] appeals."

---

go away – otherwise, he could hold the settlement process up for two to three years through the appeal process"); *Dennings v. Clearwire Corp.*, No. 10-cv-1859 (W.D. Wash. Aug. 20, 2013), ECF No. 166 (minute entry sanctioning Mr. Bandas by revoking his authority to practice in the Western District of Washington); *Embry v. ACER Am. Corp.*, No. 09-cv-1808, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) (holding Mr. Bandas in contempt); *Conroy v. 3M Corp.*, No. C 00-2810, 2006 U.S. Dist. LEXIS 96169, at *10-11 (N.D. Cal. Aug. 10, 2006) (ordering Bandas Law Firm to post $431,167 appellate costs bond to pursue "unfounded" and "patently frivolous" objections to proposed class settlement).

[20] *CRT Antitrust Litig.*, 281 F.R.D. at 533 (footnote omitted).

SAP099.[21] Mr. Frank states that he viewed Mr. Bandas's actions in some cases as "putting him at risk of sanctions." SAP123.

   For example, Mr. Bandas frequently files suit without an actual class member, as he did in other settlements in this case with two publisher defendants. AP0111-12. During this first set of settlements. Mr. Bandas appeared on behalf of another "objector." In that instance, however, the "objector" communicated directly with Class Counsel and the State Attorneys General to withdraw his objection, giving concern whether the statements filed by the Bandas Law Firm were knowingly presented and subscribed to by the purported "objector." AP0111. Similarly, Mr. Bandas frequently declines to file a notice of appearance or a *pro hac vice* application in district courts, a practice that appears designed to avoid the sanctions power of the courts.[22] Here, Mr. Bandas failed to file either a *pro hac vice* application or notice of appearance in the District Court and did not attend the deposition of Ms. Erwin, his own client whom he had never met. SAP187.

---

   [21] *See also* Marie Leary, *Study of Class Action Objector Appeals in the Second, Seventh, and Ninth Circuit Court of Appeals*, Appendices A-C, Federal Judicial Center (2013) (identifying over two dozen occasions where Mr. Bandas filed Rule 42(b) dismissal motions in the Second, Seventh, and Ninth Circuits in a five-year period, not including four dismissals for failure to prosecute).

   [22] *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087, 2014 U.S. Dist. LEXIS 27670, at *69 (S.D. Cal. Mar. 3, 2014) (denying sanctions for lack of jurisdiction).

-20-

As many courts have explained, professional objectors make a practice of objecting to settlements or intervening in class actions after a settlement is reached in an attempt to "extract a fee by lodging generic, unhelpful protests."[23] "Federal courts are increasingly weary of professional objectors,"[24] whose practice wastes judicial resources and delays classes' recoveries (thereby reducing their time value) without contributing anything of value to the litigation or the development of the law. Even meritless objections can still coerce payment due to the injuries to class members from delay, the often uncompensated costs to class counsel for responding to objections and appeals, and the risk (however small) that the class's recovery will be upended.

Mr. Bandas's objections here are as meritless as ever. The District Court correctly found that the cookie-cutter objection Mr. Bandas filed below had "extraordinarily little validity." AP0039. His objections on appeal are equally baseless, as shown below. The following sections will demonstrate the emptiness of the objections themselves, as well as Ms. Erwin's disagreements with the objections ostensibly filed on her behalf. Given these facts and Mr. Bandas's track

---

[23] *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000).

[24] *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Penn. 2003).

-21-

record, the Court can readily find that Ms. Erwin's objection is meritless and are unrepresentative of the vast majority of class members. It is more accurately attributed to the interests of a professional objector counsel than any true opposition to the settlement.[25]

**B.    At Deposition, Ms. Erwin Testified She Agreed with the Terms of the Settlement**

Unsurprisingly, given Mr. Bandas's history, his own client has a "poor understanding about the settlement and the litigation" (AP0039), as the District Court noted, and the client does not even agree with the objections made on her behalf. With the District Court's approval, Class Counsel deposed Ms. Erwin on November 12, 2014. Ms. Erwin was defended by an attorney she had only met the day before, Wade Howard, who also has not made an appearance in this case. SAP144-145. Mr. Bandas did not attend the deposition. Mr. Bandas previously represented Ms. Erwin's husband as an objector in the *In re TFT-LCD (Flat Panel) Antitrust Litigation* price-fixing litigation. AP0097-98, SAP153-154.

Ms. Erwin's testimony confirmed that she either fundamentally agreed with the terms of the settlement, or failed to understand its terms. On the substantive

---

[25] *See, e.g.*, *Hydroxycut I*, 2013 WL 5275618, at *5 ("Although the bad motive does not necessarily mean that the objections themselves are invalid, the motive does bear upon the credibility of [objectors].").

terms of the settlement, Ms. Erwin testified that only a very narrow band of recovery would satisfy her: in her eyes, a class action settlement could only be fair if it provided for precisely 100 percent recovery. AP0100-101. To provide for more would be unfair to Apple, and to provide for less would not be fair to consumers. And Ms. Erwin believed that the trial on damages had already occurred – a necessary premise to her belief that a settlement of less than 100 percent of damages in this case was unfair. AP0101.

Despite Ms. Erwin's profound misunderstandings regarding the procedural posture of this case, she agreed that the risks considered by Plaintiffs in reaching this settlement should be taken into account in any settlement. For example, Ms. Erwin agreed that if Apple was later found not to have violated the law by this Court, Apple should not pay damages (essentially, Scenario 3 under the Settlement Agreement). AP0101-102. She acknowledged that the risk of decertification, the risk that the District Court's evidentiary rulings might be overturned, and the risks of Apple appealing any damages award after a trial were all risks that should be considered in reaching a settlement. AP0104-106.

Ms. Erwin's views on the attorneys' fees requested in this case were similarly ill-informed. For example, Ms. Erwin incorrectly believed that the Remand Scenario would provide $20 million to consumers and $30 million to the

attorneys. AP0099, AP0103. She thus believed that attorneys' fees amounted to 60 percent of the recovery, rather than the 17 to 26 percent actually awarded. When asked whether it would be fair for the attorneys to be paid 20 percent of what class members would receive – roughly the amount actually awarded – Ms. Erwin agreed this would be a fair result. AP0108. And Ms. Erwin agreed that spending more than a million dollars out of the class attorneys' own funds (such as Class Counsel did here) to fund the case was an important factor to consider in the potential fairness of the settlement. AP0109, AP0159. Ms. Erwin, however, was completely unaware as to the amount spent out of pocket by Class Counsel. AP0110.

The failure of Ms. Erwin to understand the very nature of her own objection, the details of this settlement and her belief that the only possible fair settlement would be recovery of 100 percent of damages indicates that the objections filed by her counsel were not truly representative of her own beliefs.

## C.      The District Court Correctly Held the Settlement Was Fair and Reasonable for Consumers

The District Court thoroughly weighed the risks and substantive fairness of the settlement under the nine factors outlined by this Court in *Grinnell*.[26] Ms.

---

[26] *Grinnell*, 495 F.2d at 448.

Erwin (in truth, Mr. Bandas) attacks the substantive fairness of the settlement on the ground that the structure of the settlement was a breach of fiduciary duty because it somehow transferred the "risk of litigation" to the class (whatever this means). Erwin Br. at 18. And Mr. Bradley attacks the substantive fairness of the settlement as premature, suggesting that the District Court did not have sufficient information to analyze whether the settlement at issue was fair and reasonable. Bradley Br. at 9.[27] These objections are meritless – and clearly do not support an abuse of discretion finding.

### 1. The District Court Correctly Weighed the Substantive Fairness of the Settlement Under the *Grinnell* Factors

The District Court correctly assessed the substantive fairness of the settlement under the nine factors outlined by this Court in *Grinnell*: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9)

---

[27] "Bradley Br." refers to Brief of Appellant John Bradley, Apr. 17, 2015, ECF No. 67.

the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[28] Neither of the objectors challenge the District Court's application of the *Grinell* factors – or even acknowledge that *Grinell* exists and guides the District Court's discretion.

The District Court reviewed each of the *Grinnell* factors in holding that the terms of the settlement were fair and reasonable. The first factor, the complexity, expense and likely duration of the litigation supported approval of the settlement. As countless courts have noted, the "complexity of federal antitrust law is well known."[29] This litigation was as complex and expensive as any, involving an aggressive defendant who, as the District Court noted, was a "sophisticated and . . . well funded adversar[y] that would be equal to the task of litigating these issues," and "would do everything within its power to delay [the case] and to prevent these actions from arriving at a final judgment. AP0029, 0031, 0037.

The reaction of the class, the second *Grinnell* factor, also supported settlement. AP0031. Notice was sent to 23 million people – the vast majority receiving email notice at live email accounts – and the case received

---

[28] *Grinnell*, 495 F.2d at 448.

[29] *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd*, *Wal-Mart Stores, Inc. v. Visa U.S.A Inc.*, 396 F.3d 96 (2d Cir. 2005).

-26-

extraordinarily high publicity, yet only 76 class members requested exclusion and only four objected. AP0022. This infinitesimal objection rate – one out of every 5.75 million people – is well beyond the rates approved by this and other courts.[30]

The third factor, the stage of the proceedings also supported the settlement, as the parties reached agreement on the eve of trial, after the close of both fact and expert discovery, the resolution of countless motions (all in Plaintiffs' favor), the denial by this Court of a 23(f) petition, and the full briefing of summary judgment. AP0031.

The risk of establishing liability, the fourth factor, was somewhat neutral, as liability was determined through the July 2013 opinion and was on appeal to this Court. AP0032. The fifth factor, the risk of establishing damages promised to be "hotly contested and seriously litigated" although the Court found that the Plaintiffs were likely to succeed. AP0032. The sixth factor, the risk of maintaining the class action through trial was not deemed to be a serious risk. AP0032. And the

---

[30] *See, e.g.*, *D'Amato*, 236 F.3d at 86-87 (where 27,883 notices were sent and 18 objections received, "[t]he District Court properly concluded that this small number of objections weighed in favor of the settlement"); *Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) (90,000 notices and 45 objections); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212, 223 (E.D.N.Y. 2013) (approving settlement where "objectors in the aggregate represent 19% of the total transaction volume" and "[m]any of the named plaintiffs in the case are objectors").

seventh factor, the ability of the defendant to withstand greater judgment was neutral, given that Apple is one of the wealthiest companies in the world. AP0032.

Finally, the eighth factor, the value of the settlement in light of the best possible recovery also strongly supported approval. Apple alone was paying 140 percent of the total damages suffered by the class. AP0033. Considered in combination with the prior settlements with the publishers, the class would receive 200 percent of damages in Scenario 1 and 77 percent of their damages in Scenario 2. AP0033. Recoveries this high via settlement (and even through trial) are all but unheard of in antitrust class actions, and well beyond the ranges repeatedly approved by this and other courts.

The Court found that considering all of these factors and not substituting her judgment for that of "experienced, competent plaintiffs' counsel," that the settlement merited final approval. AP0034.

### 2. Structuring the Settlement Agreement Based on the Outcome of the Liability Appeal Was Not a Breach of Class Counsel's Fiduciary Duty

The objectors acknowledge that high-low settlements, such as the one reached in this case, are "not unusual" because they "bracket the parties' risk of litigation." Erwin Br. at 18. For example, the Tenth Circuit upheld a high-low

agreement in *Hoops v. Watermelon City Trucking, Inc.*,[31] where the plaintiff and a defendant entered into such a settlement in multi-party litigation, contingent on the outcome of a jury trial. In *Smalbein v. City of Daytona Beach*,[32] the Eleventh Circuit approved as efficient a high-low settlement, contingent on the outcome of a bench trial, to "streamline the issues" and provide an "expeditious way of resolving the remaining ones."[33]

Nevertheless, Ms. Erwin suggests that this structure was impermissible because attorneys' fees are a higher percentage of the settlement in the Remand Scenario (where consumers get $50 million in relief and Class Counsel and the State Attorneys General get a collective $20 million award) than they are in the Affirm Scenario (where consumers get $400 million and Class Counsel and States get $50 million). Erwin Br. at 18. But she advocates for just this type of structure elsewhere in her objection where ***she directly contradicts this very argument***. Ms. Erwin also insists that Class Counsel's fees ***must*** decrease as a percentage of the settlement as the amount of the common fund increases. This is exactly what the structure provides here – as the size of the settlement increases, the attorney's fees

---

[31] *Hoops v. Watermelon City Trucking, Inc.*, 846 F.2d 637 (10th Cir. 1988).

[32] *Smalbein v. City of Daytona Beach*, 353 F.3d 901 (11th Cir. 2003).

[33] *Id.* at 911.

010260-11 778281 V2

as a percentage of recovery decreases. Her arguments are irreconcilable as a matter of math and cannot be taken seriously.

The structure of the award was designed to benefit consumers by decreasing the percentage of attorneys' fees when measured against the class recovery as that recovery increased. AP0208. No Court has held (and Ms. Erwin does not cite any) that contingent settlements must have identically proportioned attorneys' fees in all scenarios. To the contrary, all courts, including this one, have held that attorneys' fees necessitate an individualized inquiry, unique to the case, best conducted by the District Court.[34]

And Ms. Erwin's criticism applies the wrong standard when addressing the adequacy of the settlement. As correctly noted by the District Court, in assessing the fairness and reasonableness of a settlement, the Court considers the factors outlined by this Court in *Grinnell*. AP0030-31. The Court considered each of these factors – for each contingency in the settlement – before holding that the settlement was fair and reasonable. *See* section VI.C.1, *supra*. Neither Ms. Erwin nor Mr. Bradley even acknowledge *Grinnell*'s existence, let alone contest the District Court's application.

Moreover, what Ms. Erwin fails to recognize is the outstanding recovery for

---

[34] *See Goldberger*, 209 F.3d at 48.

the class embodied by this settlement. Plaintiffs' expert economist, Dr. Roger Noll, estimated damages to be approximately $280 million. AP0062, AP0472-74. In Scenario 1 – the scenario that has come to pass, as this Court affirmed the Liability Finding – class members will recover over ***200 percent*** of the damages estimated by Plaintiffs' expert. AP0063. This recovery is nearly unheard of in an antitrust class action settlement.[35]

Under Scenario 2, which will only be triggered if this Court's opinion is reversed and remanded, consumers would receive more than 77 percent of their single damages. AP0063. This, too, represents an outstanding recovery even in isolation, as shown above. Moreover, absent a settlement, the risks of litigation for the class in this scenario would meaningfully increase, because the class would have to convince the District Court or a jury that Apple should be found liable notwithstanding this Court's opinion reversing the District Court. Recovery nearing 100 percent of damages where a court of appeals reversed the core findings about the defendant's liability would present very long odds. Under this hypothetical circumstance, recovery of 77 percent of damages is thus an outstanding result.

---

[35] *See, e.g., In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at *25-26 (D.N.J. Nov. 9, 2005).

-31-

Under Scenario 3 (the Reversal Scenario), the class will recover nothing beyond the $166 million that it has already recovered from the publisher defendants and Class Counsel, too, will be paid no further fees. AP0063-64. Ms. Erwin's objection to the settlement here directly contradicts her testimony. At deposition, Ms. Erwin testified that she believed it would be unfair if Apple was exonerated (by the Second Circuit) but still had to pay damages. AP0102. And although the objection criticizes this third contingency as placing Plaintiffs in a worse position as it requires dismissal of state law claims in addition to claims under Section 1 of the Sherman Act (Erwin Br. at 21), this again demonstrates Ms. Erwin's deep misunderstanding (or Mr. Bandas's willful misinterpretation) of the record in this case. Ms. Erwin cites to the state law claims asserted in the original consolidated complaint in this action (Erwin Br. at 21, citing AP0914-15), ignoring that this complaint was superseded by the first amended complaint which asserts claims only under Section 1 of the Sherman Act (and no state law claims). AP0667.

Ms. Erwin heavily relies on the language of the Seventh Circuit in *Redman v. Radioshack* [36] to argue that class counsel should not "shift the risk" of litigation

---

[36] *Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014), *cert. denied*, *Nicaj v. Shoe Carnival, Inc*., _U.S._, 135 S. Ct. 1429 (2015)

to their clients. Erwin Br. at 20. But Ms. Erwin extracts this language out of context. *Redman* was a coupon settlement under the Class Action Fairness Act of 2005 ("CAFA") where coupons valued at $10 were offered to the class, and only 83,000 of 16 million class members (less than one percent of the class) availed themselves of this offer. Class counsel had argued, and the Magistrate Judge accepted, that fees of $1 million would be roughly 25 percent of the settlement. Judge Posner rejected the settlement for a litany of reasons: *First*, that this was clearly a coupon settlement under CAFA, which meant fees to class counsel had to be "based on the value to class members of the coupons that are redeemed" (28 U.S.C. §§ 1712(a)). The Magistrate Judge erred by not even attempting to determine the ultimate value of the settlement, including no estimates by experts of what the ultimate value was likely to prove to be, as allowed under CAFA itself.[37] *Second*, considering the redemption rate of the coupons, class counsel's fees amounted to approximately 55 percent of the common fund.[38] Moreover, the Seventh Circuit expressed concern that class counsel had not filed the attorneys' fees motion until after the deadline set for objections had expired, leaving class

---

[37] *Redman*, 768 F.3d at 634.

[38] *Id.* at 630, 637.

members with little information regarding the amount of attorneys' fees.[39]

All of these facts stand in stark contrast to the settlement here. This settlement is for all cash, which will be automatically distributed to class members wherever possible in one of the most innovative distributions to date. AP0928. Class members have the ability to request a check or apply the money to purchase items of their choosing through the retailers. AP0928. And the small group of class members for whom contact information is not known are able to submit claims and receive checks equal to their *pro rata* share of the damages. AP0927-28. The class (and the State Attorneys General) will distribute as much of the fund as possible through this automated process (no claim forms required), until administrative costs outweigh the value of future distribution. AP0254. And Class Counsel submitted their detailed request for attorneys' fees fourteen days before the deadline for objections, and posted all papers to a public website, allowing all class members a full and fair opportunity to review and comment on Class Counsel's fee request, the settlement and the proposed plan of distribution. AP0136. *Redman* thus provides no reason to find an abuse of discretion in the District Court's

---

[39] *Id.* at 637.

reasoned judgment that the settlement is fair, reasonable, and adequate, whether considered as a whole or contingency by contingency.

### 3. Approval of the Settlement Was Not Premature Given that Discovery Was Closed and the Case Was Mere Weeks Away from Trial

Objector Bradley makes a single argument: that the District Court's approval of the settlement is premature, as the occurrence of a future event rendered it difficult for the District Court to analyze whether the settlement was fair and reasonable to absent class members. Bradley Br. at 10. Mr. Bradley suggests that the issue is not yet ripe for review.

Mr. Bradley did not raise the issue of ripeness in the District Court and has thus waived the argument on appeal.[40] As the District Court noted, Mr. Bradley's brief below was just "a piggyback [] shorter version of Mr. Bandas's brief" and had nothing in it of any merit. AP0039.

Even if this Court were to consider Mr. Bradley's ripeness argument, the settlement plainly meets the Supreme Court's test for ripeness, given the certainty

---

[40] *See* Appendix of Appellant John Bradley at 0199-0204, ECF No. 79. *See also Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 142 (2d Cir. 2000) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below."); *Kraebel v. New York City Dep't of Housing Pres. and Dev.*, 959 F.2d 395, 401 (2d Cir. 1992) ("We have repeatedly held that if an argument has not been raised before the district court, we will not consider it.").

of its terms. In addressing any and all ripeness challenges, "courts are required to make a fact-specific determination as to whether a particular challenge is ripe by deciding whether (1) the issues are fit for judicial consideration, and (2) withholding of consideration will cause substantial hardship to the parties."[41] Mr. Bradley's objections do not meet this test.

The settlement was certainly fit for judicial consideration. The District Court oversaw all aspects (except settlement) of this years-old litigation and was deeply educated in the risks and issues in order to judge the value of the settlement. AP0036. The District Court correctly noted the two driving reasons behind the settlement. *First*, the recognition that the outcome of the liability opinion would greatly shape the outcome of the class case. AP0029. *Second*, that Apple was doing "everything within its power to delay . . . and to prevent these actions from arriving at a final judgment." AP0029. Resolution with Apple, even though contingent on the liability appeal, would still give class members a quicker resolution than otherwise. This in itself has benefited class members. Indeed, withholding consideration would have caused substantial hardship to class members, forcing them to roll the dice on a jury trial against a popular defendant rather than take an unquestionably favorable settlement offer.

---

[41] *United States v. Quinones*, 313 F.3d 49, 58 (2d Cir. 2002).

But the underlying objection by Mr. Bradley – that the outcomes were somehow abstract and speculative before the District Court – is itself misplaced. This case was not in its infancy. Apple and the class settled mere weeks before trial. A full damages analysis had already been performed, allowing the notice sent to the class to calculate, to the penny, the amount that would be paid to class members under each of the scenarios. AP0927. As this Court noted in *Wal-Mart Stores*, "[i]f all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of settlement."[42]

Mr. Bradley's objection is essentially that a high-low settlement is never ripe because all contingencies are not resolved in advance. But such agreements are routinely approved.[43] Indeed, even Ms. Erwin acknowledges that such settlements are "not unusual." Erwin Br. at 18. The correct question is whether the District Court had sufficient information to approve the settlement under the factors outlined by this Court in *Grinnell*.[44] Given the stage of the proceedings, the information on damages available to the Court, the ability to calculate the

---

[42] *Wal-Mart Stores, Inc. v. Visa U.S.A Inc.*, 396 F.3d 96, 118 (2d Cir. 2005). (internal quotation marks and citation omitted).

[43] *Smalbein*, 353 F.3d at 901; *Hoops*, 846 F.2d at 637.

[44] *Grinnell*, 495 F.2d at 448.

estimated recovery for each class member based on the three scenarios, the District

Court had sufficient information to approve the terms of the settlement.

## D.     Ms. Erwin's Objections to Class Counsel's Fees Are Meritless

The District Court examined Class Counsel's request for attorneys' fees

pursuant to the factors outlined by this Court in *Goldberger*.[45] As with *Grinnell*,

Ms. Erwin does not challenge the District Court's application of the *Goldberger*

factors. Instead, Ms. Erwin creates her own standards to be applied to the award of

attorneys' fees. *First*, she argues that this Court should create a cap in so-called

"megafund" cases, an argument this Court has at least twice rejected.[46] *Second*,

Ms. Erwin believes separate negotiation of attorneys' fees from the common fund

payable to consumers should never be allowed. And *third*, Ms. Erwin believes

Class Counsel's fee should be discounted for "piggybacking" on the government

entities' work product. These manufactured objections ignore the facts of this case,

the detailed record submitted by Class Counsel regarding their fees and work

product, and the District Court's findings.

---

[45] *Goldberger*, 209 F.3d at 47.

[46] *In re Bank of Am. Corp. Secs., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig. v. Pub. Pension Funds*, 772 F.3d 125, 134 (2d Cir. 2014); *Hayes v. Harmony Gold Mining Co. Ltd.*, No. 12-118-cv, 2013 U.S. App. LEXIS 1941, at *24 (2d Cir. 2013), *cert. denied*, _US. _, 134 S. Ct. 310 (2013).

> **1.** **The District Court Correctly Held that Class Counsel's Attorneys' Fees Were Reasonable Under the *Goldberger* Factors**

In the Second Circuit, the reasonableness of any award of attorney's fees is examined under the *Goldberger* factors and must be "based on scrutiny of the unique circumstances of each case."[47] The District Court was in a unique position to provide this scrutiny. Judge Cote oversaw this litigation for nearly three years, from inception to the final settlement in the case.

The District Court evaluated Class Counsel's request for attorneys' fees by considering the publisher and Apple settlements together. AP0028. This calculation considered only the value of the settlements to be distributed to the consumer class states (and not the states represented separately by the State Attorneys General). AP0028. The following chart reflects class counsel's possible fee awards as a percentage of the total recovery to the class:

| Total Recovery to the Class | Recovery in Class States (approximately 40%) | Total Fees and Expenses to Class Counsel | Fees as Percentage of Benefit Conferred to Class States (excluding administrative expenses) |
| --- | --- | --- | --- |
| Apple Scenario #1 | $200,119,000.00 | $41,206,000.00 | 17% |
| Apple Scenario #2 | $60,119,000.00 | $21,206,000.00 | 26% |
| Apple Scenario #3 | $40,119,000.00 | $11,206,000.00 | 22% |

---

[47] *Goldberger*, 209 F.3d at 47, 53.

010260-11  778281 V2

AP0028, AP0156. Class Counsel's lodestar at the time of the motion for attorneys'

fees (before having to litigate this appeal) was $9,532,321.75 and unreimbursed

expenses totaled $607,091.56. AP0156.

At the fairness hearing regarding the terms of the settlement between Apple,

the State Attorneys General and the class, the District Court reviewed the

*Goldberger* factors in detail and concluded as follows: To the first factor, the time

and labor expended by counsel, the Court acknowledged that Class Counsel

undertook the task of collecting vast quantities of e-Book transactional data from

defendants and several third parties that the class, the DOJ, and the States all

needed to prove the economic effects of the conspiracy. AP0034. And the District

Court acknowledged that Class Counsel took the lead in several important

depositions and had to litigate motion after motion filed or opposed by Apple.

AP0035. Class Counsel were solely responsible for the certification of the class for

the 23 consumer states. AP0035. And Class Counsel , together with the State

Attorneys General, successfully moved to strike the testimony of Apple's class

certification expert, Dr. Kalt, entirely, and most of the testimony provided by

Apple's damages expert, Mr. Orszag. AP0035. Plaintiffs also successfully defeated

Apple's motion to exclude the testimony of Plaintiffs' expert, Dr. Noll. AP0035. In

addition, the class litigated a number of other class-specific motions, including a

motion for summary judgment, a motion for remand, a 23(f) petition seeking interlocutory review from this Court, and motions in both the District Court and this Court to stay trial. AP0035. The class and Apple only reached the terms of a settlement weeks before the August trial date. AP0035. The Court recognized that Class Counsel's lodestar was $10 million, which she stated "was not a surprise" to her, and "entirely within the range of what [the Court] would have expected in this case." AP0036.

To the second *Goldberger* factor, the magnitude and complexity of the litigation, the District Court noted that the case was complex, involved a conspiracy lasting many months, and spanned "an expensive series of lawsuits to litigate . . . not only because of the issues but because of the litigation choices that Apple made." AP0031. This factor supported the requested attorneys' fees.

Regarding the third *Goldberger* factor, the risk of litigation, the District Court correctly examined the risk of Plaintiffs' counsel at the beginning of the case. AP0036.[48] The District Court acknowledged that the class filed their litigation at a time when the government actions were not pending, although the State Attorneys General had announced their investigation a year earlier.

---

[48] *See Goldberger*, 209 F.3d at 55 ("litigation risk must be measured as of when the case is filed").

-41-

Moreover, at the time of filing, the class was certainly aware that both the publishers and Apple were sophisticated and well-funded adversaries, and that this would be (and proved to be) an expensive and challenging undertaking. AP0037.

The District Court found that the fourth *Goldberger* factor, the quality of the representation measured by the result, also supported the award of attorneys' fees, as the District Court characterized class counsel's efforts as "excellent" and "of great assistance to the Court." AP0037.

Similarly, the District Court reviewed the fifth *Goldberger* factor, the fee in relationship to the settlement, and found the requested fees to be "entirely consistent with historical practice in this court in terms of a percentage of recovery." AP0037-38. The District Court again noted its approval that the Apple settlement provided for the attorneys' fees to be separately funded from the consumer recovery. AP0038. The District Court also employed a crosscheck using Class Counsel's lodestar and found the multiplier of 1 to 3 (for the Apple settlement) and 2 to 4 (combining all settlements), in line with similar cases. AP0038.

Finally, the District Court found that the sixth *Goldberger* factor, public policy considerations, also supported the fee request. As the District Court explained:

> [T]he enforcement of our Nation's antitrust laws is
> vitally important to the vibrancy of our economy. Few
> firms are equipped with the resources and skills to pursue
> litigation of this complexity and against such well funded
> defendants. The skill with which plaintiffs' counsel acted
> in this case benefited the class and I would say benefited
> the American economic system as a whole.

AP0038. In addition to the *Goldberger* factors, the District Court also noted that

Class Counsel had cooperated with the Department of Justice and the states in the

litigation in a way that benefited everyone – the defendants, the District Court, the

governmental plaintiffs, and consumers. AP0034.

## 2. Class Counsel's Fee Request Is Reasonable, And the Second Circuit Has Not Created a "Fee Cap" Rule in Supposed "Megafund" Cases

Ms. Erwin suggests that the settlement should be rejected because Class

Counsel allegedly misrepresented the requested fees to the District Court, which

then fell for this sham, and because the fees exceed the range of percentages

awarded in similar so-called "megafund" cases. Erwin Br. at 28-30. These

arguments are patently wrong.

*First*, Ms. Erwin misrepresents both Plaintiffs' arguments below and the

District Court's statements about the evaluation of the case. Ms. Erwin claims that

"Class counsel argued (and the district court held) that the requested percentages

were reasonable because they amounted to 7 % ($30 million of $400 million under

-43-

the Affirmed Outcome), 17 % ($10 million of $50 million under the Remand

Outcome) and 0 % under the Reversed Outcome." Erwin Br. at 26. Ms. Erwin

accuses Class Counsel of "present[ing] their fee request as if they were the only

parties to the contract," and making "incorrect factual misstatement[s]" [sic].

Erwin Br. 26-27.

  These accusations are simply false. Far from "present[ing] their fee request

as if they were the only parties to the contract" and concealing the percentages of

the class-specific portion of the recovery, Class Counsel explicitly provided a

calculation of "Fees as Percentage of Benefit Conferred to Class States" and

defended their request because "[u]nder any outcome of the Liability Appeal, when

measured against the amount received by the class, Class Counsel would not

receive an amount that exceeded 26 percent of the benefit conferred to the class

states." AP0156. The District Court then explicitly stated that the total fees

requested by Class Counsel in all settlements amounted to 17 percent, 26 percent,

and 22 percent of the class recovery in the three scenarios – precisely the numbers

Ms. Erwin finds. AP0028; Erwin Br. at 10. Rather than acknowledge the District

Court's actual evaluation of Class Counsel's fees, Ms. Erwin misrepresents the

District Court's calculation of "[t]he total amount to be paid, ***collectively***, to

-44-

Counsel for the Settlement Class *and Plaintiff States*" (AP0016, emphasis added), as a calculation of the amount paid solely to Class Counsel.

Not acknowledging the District Court's actual calculations, Ms. Erwin makes no argument that they were an abuse of discretion. The District Court was entitled to rely on its preferred calculation, including both the Apple settlement, the prior settlement with the publisher defendants, and the prior award of attorneys' fees to Class Counsel. AP0027. Ms. Erwin's request for a remand and instructions for the District Court to determine "the correct factual premises of class recovery" is thus unsupported. Erwin Br. at 27.

*Second*, the District Court's actual calculations are in line with what Ms. Erwin demands. Under Scenario 2, total attorneys' fees to Class Counsel equals 26 percent of the total class recovery – almost indistinguishable from the 25 percent figure Ms. Erwin advocates. Erwin Br. at 29. Similarly, the percentage of attorneys' fees declines with the larger settlement fund, just as Ms. Erwin says it should. Under Scenario 1, the class recovery rises to approximately $200 million – double its damages – while attorneys' fees decline to 17 percent. The award thus does exactly what Ms. Erwin says it should.

*Third*, Ms. Erwin creates her own vision of how attorneys' fees should be awarded – arbitrarily capping fees at 10 percent in the $200 million Affirmed

-45-

Scenario, and 25 percent in the $60 million Remand Scenario. But this Court has consistently rejected imposing a set schedule and instead relies on the considerations of the *Goldberger* factors. In *Pub. Pension Funds*, this Court held that it was not persuaded by an objector's argument "that a 3% cap of attorneys' fees against the settlement total would be a more reasonable fee and that the district court erred when it declined to impose such a cap."[49] In *Harmony Gold Mining Co.*, in a summary order, this Court similarly rejected a request for a 10 percent cap on attorney's fees in a common fund case, stating that *Goldberger*'s commitment of "[w]hat constitutes a reasonable fee" to the district court signals that such proposed flat caps are inappropriate.[50] Rather than impose a uniform cap, this Court has left the proper calculation of fees in district courts' sound discretion.

*Fourth,* as the District Court recognized, the attorneys' fees requested by Class Counsel fall within the range of other awards in similar cases. Courts have awarded a range of 22 to 34 percent for attorneys' fees in cases with similar recoveries.[51] Using the lodestar as a crosscheck, the District Court found that it

---

[49] *Pub. Pension Funds*, 772 F.3d at 134.

[50] *Harmony Gold Mining Co.*, 2013 U.S. App. LEXIS 1941, at *24.

[51] *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014) (approving 25 percent fee award); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (awarding 28% of an approximate $97 million dollar fund, which produced a 3.65 multiplier); *In re Initial Pub. Offering Secs.*

-46-

would result in a multiplier of 1 to 3 (for the Apple settlement) and 2 to 4

(combining all settlements), in line with similar cases. AP0038.[52] Ms. Erwin claims

---

*Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33.3%); *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2009 WL 3077396 (E.D.N.Y Sept. 25, 2009) (awarding approximately 25%); *In re Freddie Mac Sec. Litig.*, No. 03-CV-4261 (JES), slip. op. at 1 (S.D.N.Y. Oct. 27, 2006) (awarding 20%); *In re Buspirone Antitrust Litig.*, No. 01-MD-1410, at 4, 42-45 (S.D.N.Y. Apr. 11, 2003) (awarding 33.3% of a $220 million dollar fund, which produced a multiplier of 8.46); *In re Cardizem CD Antitrust Litig.*, No. 99-MD-1278, at 18-20 (E.D. Mich. Nov. 26, 2002) (awarding 30% of a $110 million dollar fund, which produced a multiplier of 3.7); *In re Methionine Antitrust Litig.*, No. C 99-3491, MDL No. 00-1311, at 1, 8-9 (N.D. Cal. Oct. 3, 2002) (awarding approximately 22.6% of a $107 billion dollar fund with a multiplier of approximately 1.85); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *57 (D.D.C. July 16, 2001) (awarding about 34% of a roughly $360 million dollar fund); *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373, 1999 U.S. Dist. LEXIS 18378, at *1-7 (S.D.N.Y. Nov. 30, 1999) (awarding 30% of a roughly $124 million dollar fund, which produced a multiplier of 2.46); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399-400 (S.D.N.Y. 1999) (awarding 27.5% of a $ 116.6 million dollar fund, which produced a multiplier of 2.5). *See also In re Countrywide Fin. Corp. Customer Data Sec.Breach Litig.*, No. 08-md-1998, 2010 WL 3341200, at *9 (W.D. Ky. Aug. 23, 2010) ("[T]he ordinary range for attorney's fees [has been] between 20-30%."); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D. Va. 2009) (collecting cases within Fourth Circuit and in other courts with fees of 18-33.3%); *Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 723-24 (S.D. W. Va. 2009) (summarizing studies finding median awards of between 20 and 30%); *Muhammad v. Nat'l City Mortg., Inc.*, No. 07-cv-0423, 2008 WL 5377783, at *9 (S.D. W. Va. Dec. 19, 2008) (collecting cases within Fourth Circuit with fees of 25-35%).

[52] *See Wal-Mart Stores*, 396 F.3d at 123 (finding multiplier of 3.5 to be reasonable); *see also In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (finding lodestar multiplier of 1.35 to 2.99 common in megafunds over $100 million); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.

that the District Court erred in calculating the lodestar by "double-count[ing] lodestar for which [Class Counsel] had already been doubly-compensated by the earlier settlement" and that Class Counsel made a misleading "omission that their lodestar included lodestar for which they had already been compensated." Erwin Br. at 27. Here again, Ms. Erwin is nakedly misstating Class Counsel's arguments and the District Court's ruling. Class Counsel *expressly calculated* the multiplier "[c]ombined with the previous fee award" in their motion for fees. AP0165. And the District Court explicitly considered the lodestar "when you combine it with prior settlement figures." AP0038.

*Finally*, Ms. Erwin advocates this Circuit should adopt a tiered formula that the Seventh Circuit applied in *In re Synthroid Marketing Litigation*,[53] where a decreasing rate of attorneys' fees would be applied against every tier of increased recovery to the class. Erwin Br. at 30. But in *Synthroid I*, in the first appeal regarding attorneys' fees, the Seventh Circuit rejected fee caps and instructed the District Court to award counsel the market price for legal services.[54] On remand, the district court awarded 22 percent of the common fund to the third-party payor

---

N.Y. 1998) ("'multipliers of between 3 and 4.5 have become common'") (internal citation omitted).

[53] *In re Synthroid Mktg. Litig.* ("*Synthroid I*"), 264 F.3d 712 (7th Cir. 2001).

[54] *Id.* at 718.

class, and a tiered recovery to the consumer class counsel.[55] A further appeal resulted. The Seventh Circuit resoundingly rejected the District Court's award to the consumer class counsel as too small, but adopted the district court's approach and awarded tiered recovery to the consumer class counsel.[56] Subsequent opinions by Judge Easterbrook (the author of the *Synthroid* opinions) demonstrate that while he prefers the structure of a tiered award, a percentage of a common fund is still permitted in the Seventh Circuit. For example, in *Silverman v. Motorola Solutions, Inc.*,[57] Judge Easterbrook approved an award of 27.5 percent of attorneys' fees of a common fund of $200 million. But regardless, the requested fees here – 17 percent in Scenario 1 and 26 percent in Scenario 2 – are exactly the type of tiered result of which Judge Easterbrook would approve.

### 3. Agreeing to Fees as a Separate Provision from the Common Fund Was Not a Breach of Class Counsel's Fiduciary Duty

As she did in the District Court, Ms. Erwin objects to the structure of the settlement wherein attorneys' fees to Class Counsel were agreed to be paid separately from the fund paid to the class. Erwin Br. at 21. But Ms. Erwin ignores that the parties were following the guidance of the experienced District Court

---

[55] *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 96 (7th Cir. 2003).

[56] *Id.* at 980.

[57] *Silverman v. Motorola Solutions, Inc.*,739 F.3d 956 (7th Cir. 2013).

010260-11 778281 V2

based on the prior settlements. SAP046. Ms. Erwin fails to acknowledge (as she did in the District Court) that the parties followed the process the Court endorsed in the Penguin and Macmillan settlements and again negotiated with the assistance of one of the foremost mediators in the country, Antonio Piazza. AP0153. Far from calling the settlement into question, the separate agreement for payment of attorneys' fees was "protective of consumers' interests" and "added confidence in the integrity of the settlement process." AP0017.

Moreover, the structure of this settlement rendered any other approach suboptimal. The settlement was a three-way negotiation between Apple, the State Attorneys General (representing consumers who were owed 60 percent of the recovery) and Class Counsel (representing consumers owed 40 percent). If attorneys' fees had been deducted from the common fund, one of two untenable options would have required: states represented by Class Counsel could have recovered more money than the *parens patriae* states (to account for the amount deducted for attorneys' fees); states represented by Class Counsel could have recovered less money than the *parens patriae* states (after attorneys' fees were deducted from recovery). The simpler and fairer proposal was that payments to the State Attorneys General and the class were negotiated separately.

-50-

This Court has also repeatedly confirmed that the separate negotiation of attorneys' fees, without more, does not provide grounds for vacating an award of attorneys' fees. In *Malchman*, this Court held that the separate negotiation of attorneys' fees without any other indications of a "sweetheart" relationship between the negotiating parties did not raise cause for concern.[58] As this Court explained in *Malchman*, "an agreement 'not to oppose' an application for fees up to a point is essential to [the] completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."[59]

In *Blessing*, this Court reaffirmed its opinion, rejecting objectors' arguments that a separately negotiated attorneys' fees provision suggested collusion between the negotiating parties and required rejection of the settlement agreement.[60] This Court held that such provisions "without more, do not provide grounds for vacating the fee."[61] In *Blessing*, as here, the provision was negotiated after the other

---

[58] *Malchman*, 761 F.2d at 905.

[59] *Id*. at 905 n.5.

[60] *Blessing*, 2012 U.S. App. LEXIS 25987, at *6-7.

[61] *Id.*

settlement terms had been decided and was reasonable under the *Goldberger* factors.[62]

Indeed, even the courts to whom the objectors cite do not hold separate attorneys' fees provisions alone undermine a settlement; rather, the question is whether the settlement is fair and reasonable on the whole, not whether it has one specific provision.[63] For example, in *Bluetooth*, the Ninth Circuit invalidated a settlement with a separately negotiated fee provision, but only where the attorneys' fees were 83.2 percent of the value of the settlement.[64] In *Eubank v. Pella Corp.*, the Seventh Circuit invalidated a similar clause, but only because it was contained in a settlement that gave attorneys' fees equal to 56 percent of the value of the settlement (in addition to a host of other concerns).[65] And in *Pearson v. NBTY*, Judge Posner invalidated another class action settlement with a so-called "kicker" clause, but only where attorneys' fees amounted to approximately 70 percent of the

---

[62] *Id.*

[63] *See, e.g.*, *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("[N]ot every 'clear sailing' provision demonstrates collusion."); *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 (1st Cir. 1991) (where settlement includes a clear-sailing provision, "the court should scrutinize it to ensure that the fees awarded are fair and reasonable").

[64] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011).

[65] *Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014).

010260-11 778281 V2

value of the settlement.[66] In a later opinion in *Redman*, Judge Posner confirmed that even in the Seventh Circuit, "[c]lear-sailing clauses have not been held to be unlawful per se, but at least in a case such as this, ***involving a non-cash settlement award to the class***, such a clause should be subjected to intense critical scrutiny by the district court."[67]

Apparently recognizing that the actual terms of the settlement bear no resemblance to those criticized in her cases, Ms. Erwin (or, more precisely, Mr. Bandas) simply makes up provisions that are not in the settlement. Ms. Erwin claims that the agreement contains "a 'reversion' or 'kicker' arrangement" providing that "if [attorneys' fees] were reduced, the reduction would not return to the class, but rather revert to Apple." Erwin Br. at 22. Ms. Erwin has fabricated this provision out of whole cloth. It does not exist in the pages Ms. Erwin cites (*see* AP0252, AP0254, AP0261), nor anywhere else in the settlement agreement. Quite to the contrary, the agreement explicitly provides that Apple "shall pay" $450 million (or, in the Remand Scenario, $70 million) in total and that any undistributed funds "will be distributed pursuant to subsequent consumer distributions." AP0251, 254.

---

[66] *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014).

[67] *Redman*, 768 F.3d at 637 (emphasis added). *See also Batman v. The Gillette Co.*, No. 14-13882(11th Cir. July 16, 2015).

-53-

Ms. Erwin's attack on the structure of the settlement is thus contrary to Second Circuit authority and based on inapposite cases, a lack of understanding of this case, and pure falsehoods. Moreover, class members had a full opportunity to comment on the settlement and attorneys' fees, and only the two professional objectors claimed they had concerns with the structure. AP0927. To suggest the structure breached Class Counsel's fiduciary duty or in any way disserved consumers lacks any support in the record.

### 4. The Class Did Not "Piggyback" off the Government's Successful Trial, and Thus, Class Counsel's Fee Request Should Not Be Discounted

Ms. Erwin also suggests that Class Counsel's fee should be discounted because of the involvement of the DOJ and the State Attorneys General. Erwin Br. at 31-33. Ms. Erwin makes this argument only by ignoring the work performed by Class Counsel. At the time Class Counsel filed their complaints, no government action had been filed. AP0158. Class Counsel actively participated in discovery with the governmental entities, including reviewing documents, propounding and responding to 194 separate discovery requests, and leading the plaintiff groups on obtaining the giant e-Book transactional data set. AP0145, AP0171-72. Class Counsel participated in depositions with the government entities, including leading the depositions of high-level officers and executives of the defendant publishers, as

-54-

well as Penguin and Macmillan's expert economist, Dr. Daniel Rubinfeld. AP0146, AP0173.

Moreover, as outlined above, Class Counsel litigated a mountain of class-specific issues after the trial verdict. After the conclusion of the government trial, Class Counsel moved for certification on behalf of purchasers in 23 states, and submitted a multivariate regression analysis on transaction records for more than 149 million sales of 1.3 million different e-book titles. AP0147, AP0173-74. Apple fiercely opposed this motion, submitting testimony from two experts and moving to strike Plaintiffs' own expert economist's opinion. Class Counsel successfully defended the testimony of their expert and had large portions of Apple's economist's testimony excluded. AP0150, AP0177-78. The Class Plaintiffs moved for summary judgment on many of the elements of their affirmative case. AP0151, AP0179. At the same time, Class Counsel defeated a flurry of motions in this Court, including a petition for interlocutory appeal of the class certification order and a request to stay the trial date. AP0152, AP0180-82. The District Court recognized these efforts in awarding attorneys' fees. AP0034-38.

Although Ms. Erwin asserts that the liability verdict in the DOJ and State actions was pivotal in obtaining settlement in the class case, it is worth noting that the class case did not settle until a year after that trial with the DOJ. AP0146.

-55-

Although the trial certainly shaped some of the proceedings in the class case, by no means did the District Court's ruling on liability in the government actions remove all hurdles in the class case, nor did it erase the years of demanding and uncompensated work Class Counsel invested in bringing relief to consumers.

## VII. CONCLUSION

For all of the foregoing reasons, Plaintiffs Anthony Petru, Thomas Friedman and Shane S. Davis respectfully submit that the judgment of the district court should be affirmed in its entirely.

DATED: July 17, 2015                   HAGENS BERMAN SOBOL SHAPIRO LLP

By _____ s/ Steve W. Berman _____
       STEVE W. BERMAN

1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeff D. Friedman
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Kit A. Pierson
Jeffrey Dubner
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.
South Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600

-56-

Douglas Richards
COHEN MILSTEIN SELLERS
& TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797

*Counsel for Class Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 13,972 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word 2010 in 14-point, proportionally spaced Times New Roman font.

s/Steve W. Berman<br>
STEVE W. BERMAN

-58-

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Steve W. Berman
_____
STEVE W. BERMAN

010260-11  778281 V2